FRANK K. HERTEL #276681
Name and Prisoner/Booking Number

ASPC KINGMAN / HUACHUCA Unit
Place of Confinement

P O Box 3939
Mailing Address

KINGMAN AZ 86402
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

FILED ___ LODGED
RECEIVED ___ COPY

MAR 01 2021

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

FRANK   KARL   HERTEL ,
(Full Name of Plaintiff)

            Plaintiff,

v.

(1) DAVID   SHINN ,
(Full Name of Defendant)

(2) CHARLES   RYAN ,

(3) HUACHUCA Kitchen Manager MONTIEL ,

(4) Various Unknown Certified Nutritionists ,

            Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. **CV21-08044-PCT-JJT--ESW**
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☐ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A.  JURISDICTION

1.   This Court has jurisdiction over this action pursuant to:
        ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
        ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
        ☐ Other: _____.

2.   Institution/city where violation occurred: ASPC Kingman / Huachuca _____.

Revised 3/11/16                                          1                                          **550/555**

## B.  DEFENDANTS

1.  Name of first Defendant: DAVID SHINN . The first Defendant is employed
as: DIRECTOR ARIZONA DEPT. of Corrections Rehabilitation Reentry at State of Arizona .
(Position and Title)                                      (Institution)

2.  Name of second Defendant: CHARLES RYAN . The second Defendant is employed as:
as: Former Director ADCRR at State of Arizona .
(Position and Title)                                      (Institution)

3.  Name of third Defendant: MONTIEL . The third Defendant is employed
as: Kitchen Manager at ASPC HUACHUCA Unit .
(Position and Title)                                      (Institution)

4.  Name of fourth Defendant: Various Unknown Nutritionists . The fourth Defendant is employed
as: Registered DIETICIANS at Contracted Food Service Provider /ADCRR .
(Position and Title)                                      (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C.  PREVIOUS LAWSUITS

1.  Have you filed any other lawsuits while you were a prisoner?     ☒ Yes     ☐ No

2.  If yes, how many lawsuits have you filed?  1 .  Describe the previous lawsuits:

   a.  First prior lawsuit:
       1.  Parties: FRANK HERTEL v. Everett KRUEGER
       2.  Court and case number: Federal District Court of SOUTHERN OHIO 2:18-cv-179 .
       3.  Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)
           DISMISSED .

   b.  Second prior lawsuit:
       1.  Parties: _____ v. _____
       2.  Court and case number: _____
       3.  Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
           _____

   c.  Third prior lawsuit:
       1.  Parties: _____ v. _____
       2.  Court and case number: _____
       3.  Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____
           _____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## D.  CAUSE OF ACTION

### COUNT I

1.  State the constitutional or other federal civil right that was violated: FIRST AMENDMENT FREE EXERCISE and Establishment CLAUSES, My Rights under the Religious Land USE and Institutionalized Persons ACT (RLUIPA).

2.  **Count I.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
    ☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
    ☐ Disciplinary proceedings ☐ Property ☒ Exercise of religion ☐ Retaliation
    ☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____.

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

On August 1, 2020 ADCRR Director David Shinn eliminated the 1998 established ADCRR Kosher Meat Menu (KMM) and replaced it with a Vegan, "Common Fare Menu" (CFM). (See Notification 8/1/2020 Ex. H) My Affidavit (Ex. A) establishes that my sincerely held Jewish beliefs mandate that I eat Kosher Animal products daily (Id. pg 10 under e.), so upon Notification of the pending elimination of the KMM on July 4, 2020 I vehemently objected, stating I was unwilling to be converted to the vegan religious beliefs of other religions, (Id. pg. 10 under f.) Pastoral Activities Administrator (PAA) Kenneth HERMAN answered for Director Shinn on 8/10/2020 and stated "Notwithstanding" my sincerely held religious beliefs, the KMM elimination was "appropriate" without showing proof of why this might be so. Thus on 8/1/2020 I was automatically taken off the KMM and against my objections placed on the CFM. I found the CFM contains only 10% personally verifiable Certified Kosher Content (Id. pgs 1-6), so I grieved on 1ST Amendment and RLUIPA grounds on 8/5/2020. In 1998 the KMM was established with 100% Kosher Content, (Ex. A2; Ex. A pg 6) all food items being either Factory Certified and Sealed Kosher, or intrinsically Kosher whole, uncut Fruits and vegetables. (Id.) By 2015 when I was first placed on the KMM, the Kosher Content was only about 50%. (Ex. A pg 6.) The Previous ADCRR Director Ryan had changed/degraded the KMM multiple times over the years, (Ex. A2 History KMM) so that by 2015 items such as NON Kosher ADCRR produced Bread (See Store List Ex. A5, Affidavit Ex. A pg 7) were placed on the KMM. I grieved when on 3/30/2019 Huachuca Kitchen Manager MONTIEL, taking advantage

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

As I am indigent, the KMM elimination violates my free exercise rights where I now cannot eat Kosher Animal products and pray over them before I eat on a daily basis. Moreover the establishment clause is violated where my Jewish religion is inhibited while vegan religious practices are advanced. ALSO, if I only ate those items on the other alternative menus available to me I would starve, for their Kosher content is only 10% of the caloric basis.

5.  **Administrative Remedies:**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
    b.  Did you submit a request for administrative relief on Count I? ☒ Yes ☐ No
    c.  Did you appeal your request for relief on Count I to the highest level? ☒ Yes ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

3

of KMM ambiguities created by Ryan, reduced my portion sizes by starting to cut my vegetables, rendering them unKosher. (Ex. A pg 4-5 under 10. e))

Former Director Ryan found cutting "appropriate", so my vegetables are still cut/ unKosher today (Id.)

On 4/19/2019 I was forced to eat my unleavened Passover meals in a Leaven defiled chow hall, rendering all my passover meals unKosher. On 9/25/2019 Kitchen Manager Montiel publically stated that "no Kitchen in ADCRR is Kosher certified," but then replaced my previous Kosher whole, fresh fruit with Kitchen Processed, thus unKosher canned fruit. (Ex. A pg 2 under 2. d))

In spite of the fact that I immediately grieved the nonKosher fruit issue on 11/19/2019, my fruit still remains Kitchen processed/unKosher today. (Id.)

I have an unreasonable burden placed on the exercise of my Jewish religion where I am prevented by Director Ryan and Shinns' Menu Policy and Manager Montiels' Kitchen Customs from being able to daily eat : (1) Kosher; (2) Kosher Animal Products. (Ex. A Affidavit pgs 8-11) This violates my RLUIPA rights where, when I asked/Grieved Director Shinn, he was silent/unable to show me a compelling governmental interest, and I affirm that there is in fact none to justify his KMM elimination and historic Kosher degradation. (Ex. P pgs 1-2) Additionally, where plainly a Kosher religious Meat Menu subsumes all other menus since the Kosher Meat standard is the highest standard, ADCRR Director Shinns' action to eliminate my KMM and forcing me to choose between a 10% Kosher, Vegan CFM or the 5% Kosher ADCRR General Meat menu is coercive, in violation of the establishment clause where Shinn is obviously favoring inmates of non Jewish religions whose lower religious standards allow them to eat the CFM or General Menu without violating their beliefs.

The Establishment Clause is plainly violated where, in his own words, Director Shims' Policy to eliminate the KMM was so "religious and Kosher diets" be replaced with the CFM "which meets religious requirements,,,"(Ex. H) thus his purpose was plainly non-secular. Next, the primary effect of Director Shims' policy change is to inhibit my Kosher Animal product consumption beliefs, (Affidavit Ex. A pg. 8-11) because for the first time in 22 years ADCRR does not offer a Kosher Meat Menu, and because I am indigent and unable to purchase Kosher Animal Products from the store. Furthermore, Vegans or those of lower religious dietary standards were either advanced (Vegan Buddist or 7th Day Adventists) or unaffected by his policy change. (Id.) It is obvious the KMM elimination policy fosters excessive ADCRR entanglement with my religion where historically ADCRR has always sought to suppress and degrade my Jewish Kosher/Kosher Animal product consumption beliefs by constantly modifying/degrading the KMM. Director Shims' policy now effectively negated the 1997 decision by the 9th Circuit to establish the KMM for which inmates had fought since 1985. (Ex. A pg 8-11) Moreover, since the 1997 decision was based on ADCRRS' denial of the 1st Amendments free exercise clause, it is plain the August 1, 2020 policy change again violates my free exercise of Kosher Animal product consumption on a daily basis. (Ex. A pg 8). I submit that obvious, resonable alternatives to Director Shims KMM elimination policy exist, namely reinstating the previous, pre 2005, 100% Kosher certified KMM (Ex. A pg 10 under g) ) and that this easy alternative overwhelms any perceived governmental interests which may exist to counter my 1st Amendment and RLUIPA rights to daily consume Kosher Animal Products.

3 B

**COUNT II**

1. State the constitutional or other federal civil right that was violated: The Elimination of the KMM and other Food Policy and custom inequalities violate my 14th Amendment Equal Protection Rights.

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☒ Other: Equal protection based on Religion.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

   As shown on Count I above, the defendants' food discrimination is on basis of my religion, so I ask this court to focus here on my status as a Jew, not my status as an inmate where I believe a more rational basis review is inappropriate. I grieved the following equal protection claims based on inequalities between the General Menu and the KMM and the CFM:
   (1) General Menu inmates are given special menus on National Holidays, but as a Jew on the KMM or CFM I am excluded. For example, on Thanksgiving I get two cups of non-Kosher beans while every General Menu inmate gets turkey, stuffing, gravy and cranberry sauce. I object to ADCRR's' plain categorization of being non-american on basis of my Jewish religion.
   (2) General menu inmates are provided two hot meals/day. Initially the KMM provided two hot meals in 1998, but was reduced to only one in 2005. The CFM includes only one hot meal/day, none on the Sabbath. My Kosher for Passover menu went from two hot meals a day to ZERO for the entire eight days of Passover currently, plainly making its discrimination religious. (Affidavit Ex. A pg 6 table column A)
   (3) Both the post 2005 KMM and the CFM are ambiguous, allowing Kitchen Manager Montiel by his personal custom to choose what to serve me, making the Registered Dietician's recommendation irrelevant. (Ex. A pg 4-5 under 10. e); pg. 7.) Montiel always chooses the cheapest, most unpopular fruits, vegetables and Hot trays making my menus' monotone two to four day cycles where the General menu is based on a varied 42 day cycle similar to the Federal BOP Kosher meat menu (Ex. A pg 6 table column B) Montiel has NEVER provided me Tomatoes and Scallions even though they are listed on the KMM/CFM,.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
   Where eating is a holy ceremony per my sincerely held Jewish beliefs, the discriminatory actions of defendants do not allow me in good faith to perform this ceremony where I'm being singled out and starved during Passover and caused to lose weight, not given Animal Products or Kosher food to eat and being treated as a second class citizen during National holidays.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?   ☒ Yes   ☐ No
   b. Did you submit a request for administrative relief on Count II?   ☒ Yes   ☐ No
   c. Did you appeal your request for relief on Count II to the highest level?   ☒ Yes   ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

4

are mandated by the Dietician, and were given to me at other ADCRR units. In contrast, the General Menu is specific, stating "carrots" instead of "Vegetables" and "peaches" instead of "fruit" thus not allowing the General menu to be arbitrarily tampered with by Kitchen staff. (Ex. A pg 6 table column E; General menu Ex. A4)

(4) General menu inmates are still provided meat, milk, cheese and eggs where the CFM has taken these items from me. (Affidavit Ex. A pg 8-11; compare General menu Ex. A4 listing of Animal products with the Vegan CFM Ex. A pg. 1-6)

(5) I submit and affirm that the Kosher Passover menu has lost over twelve pounds of food between Passover week 2014 and the current Passover. Because of this caloric/nutritional insufficiency I have lost weight every passover starting in 2015, while General Menu inmates were not starved during the same week, and General menu inmates were not forced by the Directors' Food policy to lose weight. Moreover, the ADCRR Directors Food Policy and Kitchen manager custom specifically discriminates against me as a Jew:

Eating is a holy ceremony per my sincerely hold beliefs, Director Ryan and Shinns' food policy/Montiels' custom has prevented me from the same reasonable opportunity to pursue my faith during breakfast, Lunch, and dinner, as given to General menu inmates of other religions. A General Menu inmate can thank his creator for the food ADCRR provides, but I cannot. My faith does not allow me to eat the overwhelming Non Kosher Content served to me, nor can I thank my creator for the Animal products which are commanded me, but now denied me through the CFM. I cannot in good faith give thanks for the starvation I experience during passover, nor the punitive cold food served to me then, especially since during National Holidays General Population inmates are given special meals and I am deliberately excluded for being a Jew even as they thank their creator for their festive meals.

4 A

Here again the existence of obvious, easy alternatives to the Defendants' discriminatory food policies and customs outweigh any ADCRR interests:

(a) Provide me with special National Holiday Meals. The cost of a Kosher Turkey TV Dinner for thanksgiving is plainly negligible where that TV Dinner would replace the regular one.

(b) Pre-2005 ADCRR provided two hot Kosher Meals per day, so changing back to that menu (Ex. A2) or the Federal BOP Kosher menu (Ex. A1) is an easy alternative already in place and cost effective.

(c) Making my menu unambigous costs nothing. "Fruit and Vegetables" merely have to be typed into "oranges" and "Tomatoes" per the Nutritionists' proof sheets which logically specifies which fruits, Vegetables and TV Dinners conform to the daily dietary standards.

(d) Providing Kosher Animal products to me again, merely requires a return to the Kosher Meat Menus ADCRR has provided since 1998.

(e) Reinstating the pre-2015 ADCRR Kosher Passover Menu would eliminate my starvation and weight loss at a plainly modest cost, where that cost was easily borne by ADCRR from 1998-2014.

The above, easy alternatives are mandated where: I have no alternatives as I am dependant on ADCRR for my food; my accomodation will have no impact on guards or other inmates as the proper accomodation has existed previously without problems and exists in Federal BOP; cost or menu simplification were never given much weight by the 9th Circuit, especially considering that all I am advocating is a return to the previously existant Kosher Meat Menu /Kosher Passover menu with only minor modifications for national holidays and diversity of menu selection.

4 B

**COUNT III**

1. State the constitutional or other federal civil right that was violated: The elimination of my Kosher Meat Menu constitutes cruel and unusual Punishment in violation of the 8th Amendment.

2. **Count III.**  Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
   - ☒ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3. **Supporting Facts.**  State as briefly as possible the FACTS supporting Count III.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

   When Director Shinn eliminated the KMM, he simultaneously eliminated 94%, Ninety four Percent, of my weekly Fruit intake. (Ex. A pg. 6)
   Per a plain reading of authoritative U.S. Dept. of Agriculture (USDA) sources, neither the CFM, nor the General menu are sufficient to sustain me in good health. The 2020 USDA Guidelines were established to prevent chronic, diet related diseases which effect half of all adult americans, and these Guidelines are used by both the District Court of Arizona and the 9th Circuit as the de facto Eighth Amendment Food Standard. (Ex. A pg 8-9)
   The Guidelines mandate a weekly FRUIT intake of Seventeen and a half cups of fruit and the CFM and General menu only provides ONE cup of fruit a week (!) grossly violating the USDA Guidelines. (Ex. A pg. 5-9) The Vegetable portions of the CFM and General menus are also insufficient, (Id) making it inevitable that I contract Diabetes, cancer, hypertension and other chronic diseases if I remain on the Fruit and Vegetable insufficient, CFM or General menu. Note that the 1998-2020 KMM met the 17½ cup weekly USDA Guidelines fruit intake, and only since the menu ambiguity allowed cutting of Vegetables was the KMM insufficient in Vegetables. (Ex. A pg. 5) My Affidavit (Ex. A) pg 11 establishes that a mere three weeks on the CFM made me lose weight and left me feeling nauseous, fatigued, with irregular bowel movements due to the severe Lack of.

4. **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

   Loss of body weight, nausea, fatigue with irregular bowel movements once I was forced on the Fruit and Vegetable insufficient CFM starting August 1, 2020. I fear for my life due to the gross lack of fruits and vegetables in my diet where the USDA Guidelines make clear that I will inevitably contract an easily preventable diet related chronic disease due to Fruit/Vegetable insufficiency.

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b. Did you submit a request for administrative relief on Count III?  ☒ Yes  ☐ No
   c. Did you appeal your request for relief on Count III to the highest level?  ☒ Yes  ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

fruit and omission of animal products. I fear for my long term health because I have seen so many fellow inmates on the fruit and vegetable insufficient General Menu develop diabetes, high blood pressure, colo rectal cancer and other diet related diseases that led to more than one death and hospitalization which I can personally attest to. Moreover, the "meat" contained in the General Menu is labelled "Not for human Consumption" which a cursory record check of the Kitchen will verify.

But my Affidavit Ex.A pg 6-9 details additional punitive aspects of the CFM:

(1) CFM has three times as many cold meals as either the Federal Kosher Menu or the ADCRR General Menu. (Id. pg 6.)

(2) CFM is a repetitive two day meal cycle where the General Menu is a 42 day cycle and the Federal BOP is on a 35 day cycle. This repetition makes me physically sick, since nutrient variety is lacking due to Kitchen Custom. (Id pg 6-7)

(3) CFM is a "Bread and water" diet, having 70 slices of bread / portions of cold cereal per week, more than twice the 34 in the General Menu and significantly more than the 44 in the Federal Kosher menu. Bread and water is, of course, the quintessential punishment menu and I perceive the CFM as such. (Id. pg 6-7)

(4) I am being spiritually punished where the personally verifiable Kosher Content of the CFM is less than 10% caloric content. I am vehemently opposed to being converted to a Vegan belief system, but that is exactly what Director Shinn is forcing on me with his CFM. (Id. pgs 6-7)

(5) The CFM is ambiguous, allowing Kitchen staff to arbitrarily punish me. I submit that when I first grieved the vegetable ambiguity issue, Kitchen staff punished me by withholding carrots, cucumbers, green peppers, onions, scallions, zucchini and tomatoes from my menu for a week, feeding me celery instead (Id. pgs 6-7)

(6) ALL my grievances were met with Deliberate indifference by ADCRR Staff, including

5 A

Directors Ryan and Shinn, who were plainly on an anti-semitic Vendetta to make my Kosher Meat menu more and more punitive each year since 1998. Neither Director ever gave me the slightest relief. Ryan was even unwilling to change the ambigous "Vegetable" menu callout back to the specific "Tomato" call out, thus aiding and abetting Kitchen Staff in their arbitrary punishment of Jewish inmates like myself which they plainly can't do to the specific General Menu. Only my fervent prayers keep me from sinking into depression and anxiety over the Directors' blatant attempt to destroy my health. (Id, pg. 11) It took an absurdly long thirteen years, from 1985 to 1998 for Jewish inmates to force ADCRR to give them a Kosher Meat Menu. In 2020 it took a stroke of a pen and a mere month for Director Shinn to eliminate it. Director Shinns' strategy is obvious to me. His lawyers will no doubt milk this civil rights violation for as long as they can and kill some Jewish inmates with their grossly unhealthy food over the course of the next few years.

I beg this court not to allow this gross ADCRR anti-semitism to punish me daily for my Jewish Kosher Meat beliefs. I ask this court to find that Director Shinn and/or his Registerered Dietician and/or Kitchen Manager Montiel actually or constructively knew that the gross violation of the USDA Guidelines - inter alia by the overnight 94% reduction of fruit - would necessarily produce a grave risk to my health, (where every child knows "an apple a day keeps the doctor away" and director Shinn is unwilling to ever give me that apple a day.) further finding that a menu so grossly lacking in fruit is presumptously unhealthy, and is certainly unhealthy per the 2020 USDA Guidelines. Finally finding that Director Shinns' failure to take the easily available measure of reinstating the previous, healthy Kosher Meat menu establishes his deliberate indifference, and thus establishes the above violations of my Eighth Amendment right to be fed a menu to sustain me in good health.

5 B

## D.  CAUSE OF ACTION

### COUNT IV

1.  State the constitutional or other federal civil right that was violated:  ADCRR Policy, Department Order (DO) 902 denies my Constitutional DUE Process and Equal Protection rights of meaningful Access to the courts.

2.  **Count IV.** Identify the issue involved.  Check **only one**.  State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☒ Access to the court
   - ☐ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: _____

3.  **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

DO 902 (EX. W) Section 3.1.4.1 denies my access to any out of state legal materials (Id. pg. 5), thus denied my meaningful access to OHIO State courts to file criminal and civil Petitions in that state. Furthermore, where DO902 Section 3.1.3.2 provides no Arizona state Law Archive services (Id.), I was denied access to the 1996 Arizona Statutes needed to file meaningful Arizona criminal Petitions upon my incarceration in 2012. Finally where DO 902 section 3.1.3.1 and ATTACHMENTS A and B provide no access to State or federal Case Law Reporters, or case Law in General, (Id pg 5, 13, 14) all my Petitions were ultimately denied for technical violations of Ohio, Arizona, or federal procedural Rules of which I was unaware of because of DO902 denial of access to case law defining the Legal terms of said procedural Rules.
My Affidavit in support of Denial of Access to the courts claim (EX. AN) establishes the following:
1. I was indicted in the year 2000 in both Arizona and OHIO. (EX. AN pg 5,8)
2. I was tried in full Absentia in Arizona in 2001, but not arrested or sentenced until 2012 (Id. pg 8). I was transferred to Ohio per the Interstate Agreement on Detainers (IAD) in 2013 and pled guilty twice because there is confusion whether the current or the 1994-1997 Ohio Statutes are more prejudicial to myself. (Id. pg 5-6 under 14.) To compel me to plead, the Prosecutor reindicted me on identical charges with force specifications in OHIO in 2014. My appointed trial counsel immediately motioned for dismissal of both the 2000,

4.  **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).
All of my OHIO and Arizona State and federal Petitions were ultimately denied for technical violations of procedures resulting in untimeliness. DO 902 failed to provide me access to these procedures, thus I had no meaningful Knowledge of these procedures. Also, DO902 failed to provide me with OHIO forms, or the "old" 1996 OHIO and Arizona Statutes I needed to file a meaningful claim, so I was forced untimely by DO902.

5.  **Administrative Remedies:**
   a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
   b.  Did you submit a request for administrative relief on Count I?  ☒ Yes  ☐ No
   c.  Did you appeal your request for relief on Count I to the highest level?  ☒ Yes  ☐ No
   d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

6

and the 2014 indictments on constitutional, statutory and IAD speedy trial grounds. I plead to the 2000 indictment on March 4, 2014. The 2014 indictment was improperly dismissed without prejudice on March 18, 2014 even though the IAD speedy trial and anti-shuttling provisions mandate dismissal with prejudice. My appointed OHIO Appellate counsel failed to file Notice of Appeal (NOA) in Case 2014 and filed a mere _Anders_ Brief in case 2000. (Id. pgs 2-3)

3. I was returned to prison in Arizona in late April 2014. I had only spoken to my OHIO Counsel once on or about March 10, 2014 and wrote him a letter on March 20, 2014 ordering him to appeal Case 2014 on IAD Grounds. I was shocked when he, without further notice to me, filed an _Anders_ brief on July 14, 2014. (Id pgs 2) I immediately attempted to file Motion for Delayed Appeal (MDA) in Case 2014, but lacked the forms, caselaw and Ohio Statutatory sources to do so effectively, so the OHIO Court of Appeals denied MDA on procedural Grounds unknown to me at the time of my MDA hand-written filing. (Id.)

4. DO 902 section 3.1.4.1 specifically prohibits all ADCRR sources such as my prison Law Library, paralegal or any other legal assistants from providing me access to "Forms, documents, or any legal materials from other states..." (Id pg 1 under 3. see also DO902 EX. W pg. 5) Thereby DO902 denied me meaningful access to the OHIO Forms, case law, procedures and statutes necessary to file meaningful :

(a) Motion / Delayed Appeal where I was completely unaware of the OHIO procedural / legal / and factual basis of my MDA claim, thus was denied by the OHIO Court of Appeals for failure to state a claim, quoting case law I had no access to. (EX. AN pg 2 under 5.)

(b) Pro Se Appellate Brief where I was unable to include the critical case 2014 issues in my Brief due to loss of MDA. Furthermore, where I had no.

6 A

ADCRR given access to Ohio Statutes, case law, Rules of Court or procedures, I was unable to make any meaningful claims since I wholly lacked the ability to Know, research or understand any OHIO Legal basis and its resultant factual basis. (Id. pg 2-3 under 6.) Furthermore, where I had no access to state or federal case law thanks to DO902, (Id pg 1-2 under 4.; Ex. w pg 5, 13, 14) I was unable to Know what my rights under Anders or its 6th Circuit or OHIO state progeny were, since counsel filed an Anders Brief and failed to communicate with me. (Ex. AN pg 3 under 7.) My Pro Se Anders brief included nothing more than the grounds included in my pretrial Motion to dismiss and some arguments my 81 year old mother sent me, (Id pg 3 under 8.) but the OHIO Court of Appeals refused to rule on my Case 2014 Claims since they denied MDA in that case. (Id. pg 3 under 9.)

(c) Petition to the Ohio Supreme court appealing denial of MDA. (Id pg 4 under 10.)

(d) Application For Reopening in Case 2014 (Id pg 4 under 11.) and simultaneously, several months later, in case 2000 and Case 2014. (Id pg 4 under 12.)

(e) Post Conviction Relief Petition which was denied on procedural/untimliness grounds by the Common pleas court, citing OHIO Revised Code (O.R.C.) 2953.21 and 2953.23, Statutes I had no access to because of DO902. (Id pg 5-6 under 14.)

(f) Likewise, my OHIO State Habeas was denied because I was unaware that pursuant O.R.C. 2725.03, OHIO Habeas Courts do not have jurisdiction over prisoners housed out of state. (Id. pg 6-7 under 15.)

(g) I affirm and submit I have no idea whether I have a procedural way to raise my sentencing claims in Ohio state courts because I'm unable to access OHIO Post Conviction Procedures since DO902 prevents my access to same.

(h) I affirm and submit that if DO902 had not denied my complete access to all OHIO materials, I would have been able to read the "old" OHIO Statutes I was sentenced under and ascertain that the 19 to 95 year sentence imposed on me was plainly excessive

6 B

per the O.R.C., Apprendi / Blakely , and where OHIO First time offenders were mandated to be sentenced to concurrent minimum definite sentences of three years, (Id pg 5-6 under 14.) Unfortunately my mother sent me copies of the necessary OHIO state information bit by bit over the course of three years so I obtained it untimely for an OHIO Post Conviction Relief Petition and was denied review on the merits. (Id.) I affirm and submit if DO 902 had not prevented access to those OHIO materials I would have raised these sentencing issues timely on my Pro Se Anders Appeal in 2014, then filed timely Federal Habeus on all my OHIO issues in 2015 (Id. pg 7 under 17.), and plainly resentenced to a lesser term or had my OHIO Sentence / Conviction dismissed with prejudice.

5. DO 902 also denied myself meaningful access to the Arizona State Courts,

(a) DO 902 Section 3.1.3.2 provides that ADCRR Libraries / Paralegals / any other legal assistants "are NOT required to posess and shall not posess older versions of the law or policy; there are no archive services." (Id pg 7-8 under 18.; See DO 902 section 3.1.3.2 EX.iw pg.5) As I was tried in Absentia in 2001 for a single count violation of the 1996 Arizona Statutes, and as I was not arrested and sentenced until 2012, DO 902 section 3.1.3.2 denied me access to the statutes I was indicted, convicted, and sentenced under. (Ex. AN pg 7-8 under 18.) Note also that during pendancy of my Arizona Direct Appeal and 1ST PCR proceeding I was awaiting trial in OHIO without any access to Arizona materials, (Id pg 8 under 19.) and neither my appointed appellate nor 1ST PCR counsel argued sentence or provided me with copies of my indictment and sentencing statutes. This created the absurd situation that I had no knowledge of my 2001 Absentia trial proceeding until I received the trial transcript in August of 2014, well after completion of my appointed counsels' appeal and 1st PCR proceeding. (Id.) I was finally able to find the relevant old Arizona Statutes

6 C

In the legal boxes of older inmates, (Id pg 9 under 21.) and immediately filed Pro Se Notice of 2nd PCR on August 31, 2015. The Pima County Superior Court found me timely and ruled on the merits of most of my claims, but upon Review the Court of Appeals found my Notice untimely pursuant State v. Lopez, 234 Ariz. 513, (Id pg 10 under 24) Case Law to which I had no access to pursuant DO902. (Id. pg 1-2 under 4; pg 10 under 25.) I submit and affirm that if DO902 had not denied my access to the 1996 Arizona Statutes and Case Law, I would have obviously filed timely 2nd PCR Notice on or before July 1, 2015 where I would not have to rely on other inmates' Statutes on August 31, 2015, but rather would have found those statutes in August of 2014 when I received my transcripts/records from appointed counsel. Alternatively, if I would have had access to Lopez, I would have known I was untimely on August 31, 2015 and would have simply filed my Federal Habeas on that date, raising only my appellate and 1ST PCR claims, then motioned for stay while I attempted Motion for Delayed, out of time 2nd PCR. (Id pgs 10-12 under 26.) As it was, I proceeded under the assumption that I was timely per the plain reading of Ariz. R. Crim. P. 32.4 eff 2014 which defines PCR timeliness as being dependant on the issuance of the August 15, 2015 mandate, not the July 1, 2015 decision as per Lopez. (Id. pg. 9 under 21.) Clearly DO902 denial of access to Lopez, the "old" 1996 Statutes and Case Law made my 2nd PCR Notice not "meaningful" where I was clearly unable to determine timeliness or file timely because of DO902.

(b) On June 29, 2020, when I attempted to file Notice of 3rd PCR, the trial Court denied my Notice because I cited no legal basis for my claims. Here again DO902's denial of access to Arizona State Case Law prevented me from meaningful access to to the legal and factual bases of any future claims. (Id. pg 12 under 27.)

6 D

6. DO902 denied me meaningful access to the federal courts where meaningful access is only given _if_ I am given the ability to understand the intricacies of the last question of the federal §2254 Habeas form as it pertains to AEDPA/28 U.S.C. §2244(d) timliness. (Id pg 1-2 under 4.) DO902 Section 3.1.3.1 and ATTACHMENTS A and B explicitly denies me access to federal Case Law/reporters from which I might have formulated the legal basis – and corollary factual basis specific to my case – of the federal habeas timeliness of :

(a) §2244(d)(2) since without case law to define "properly filed application for State post-conviction or other collateral review", I had to make the logical assumption that acceptance of my 2nd Arizona Notice of PCR by the Clerk and/or the Superior court constituted "properly filed", thus I assumed in good faith that the entire time my 2nd PCR was pending, up to the issuance of the mandate by the court of Appeals, should not have counted toward the one year limitation period, and should have rendered my federal habeas timely. (Id. ; see also pgs 10-11 under 26.)

(b) §2244(d)(1)(A) since without case law to define "conclusion of direct review", I could in good faith assume that the issuance of the Arizona Supreme Courts' mandate of August 15, 2015 was, in fact this "conclusion." Moreover "expiration of the time for seeking such review" would in good faith mean that the 90 day period for seeking review with the U.S. Supreme court would be added to the August 15, 2015 date.(Id.)

(c) §2244(d)(1)(B) without case law to define "Impediment to filing" I had no previous basis to argue that DO902 is, in fact such a State impediment to filing where DO902 Completely failed to provide me with any OHIO materials, and failed to provide me access to the Arizona/Federal materials needed to file meaningful, timely Petitions in the State and Federal Courts of OHIO and Arizona. (Id pg 1-2 under 4; pgs 5-12 under 14, through 26.)

(d) §2244(d)(1)(c) since DO902 explicitly denies me access to the U.S. Supreme Court

6 E

reporter, DO902 denies me the time sensitive knowledge of relevant, newly recognized "constitutional rights asserted by the U.S. Supreme Court." (Id pg 1-2 under 4.) So far DO902 has seamlessly denied me access to all reporters since 2011 which might have informed me of any new constitutional rights actionable in the courts.

(e) §2244(d)(1)(D) since without case law to define what a "factual predicate" is, or what constitutes "due diligence", I obviously cannot meaningfully present a claim of timeliness here. (Id.)

(f) Both my Arizona and OHIO Federal Habeas were ultimately found untimely because of technical violations of 28 U.S.C. §2244(d)/AEDPA (Id. pg 7 under 16.; pg 10 under 26.)

7. As ADCRR Director Shinns' signature on the cover page of DO902 (Ex.w) shows, he is responsible for the DO902 policy as was Director Ryan before him. Director Shinn is thus directly responsible for my continuous and ongoing denial of access to the State and Federal Courts of Arizona and OHIO. See Affidavit Ex. AN, supra

8. As shown above, Director Shinns' DO902 violated my constitutional Due Process rights / Rights of meaningful Access to the courts by not allowing me the basic tools necessary to present, inter alia, meaningful "old law statutes" sentencing claims in a timely manner to the OHIO and Arizona courts.

9. Director Shinns' DO902 also violated my Equal Protection Rights where ANY Arizona citizen wealthy enough could have bought the necessary materials, or simply have accessed the statutes, procedures, forms and Case law physically or online at their nearest non-ADCRR Public Law Library. As I am an incarcerated, indigent ADCRR inmate, Director Shinn was

6 F

constitutionally mandated to assist me in preparing and filing of meaningful legal papers in both my Ohio and Arizona criminal cases by providing me with an adequate law library or adequate assistance from persons trained in the law. But as the above makes plain, Director Shinn has failed to do so. If anything, his DO 902 policy is a state impediment to filing any out of state, or "old law" in state claims. DO 902 provides no notice of New U.S. Supreme Court decisions defining retroactive new constitutional law which I might use to file federal claims under § 2244(d)(1)(c), and no case law to meaningfully define the terms necessary to make a meaningful argument for AEDPA/ 2244(d)(1) through(2) timeliness. DO 902 made my past, present, and future petitions to any court futile because my situation is unique. I submit and affirm that I do not know of any other ADCRR inmate who was tried in Absentia, then not arrested or sentenced for eleven years. Moreover I know of no other inmate who needed access to materials necessary to file in the state, District, and Circuit courts of two states simultaneously, and for that purpose DO 902 is plainly an impediment to filing specifically for myself. But it does not have to be. Director Shinn has recently provided me, and all other inmates, with an electronic tablet, which even has the ability to send and receive emails to friends and family. The tablet could easily be connected to the same sort of server currently in use in Arizona and Ohio's public law libraries to provide me with the forms, statutes, case law, procedures and rules of court I need to file a meaningful claim in the courts. Otherwise, of course, Director Shinn could easily provide me paper copies of the U.S. Supreme court, state and federal reporters, Ohio and Arizona Statutes 1996-2020, etc. which I need to file meaningful legal Petitions in the Ohio and Arizona Courts. I respectfully ask this court to find that Director Shinn must provide me the materials/access that I need.

6 G

## E.   REQUEST FOR RELIEF

State the relief you are seeking:

I would Like to have this court order ADCRR Director Shinn to Revise his food policy and his DO902 Access to the court Policies in the following Manner:

A. Food Policy:

   1. Renstate the Kosher Meat Menu (KMM)

   2. The KMM to be as varied as the 42 day cycle ADCRR General Menu (Ex. A4) or the 35 day cycle Feder BOP Kosher Menu with fifteen distinct hot meat trays, (Ex. A1).

   3. The KMM to be as specific as the pre-2005 ADCRR Kosher Menu which Listed "TOMATO,

(continued on page 7A)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _February 22, ~~FICTION~~ 2021_
              DATE

_____
SIGNATURE OF PLAINTIFF

_____
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

_____
(Signature of attorney, if any)

_____
(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

carrot, apple, orange, etc. instead of the present, ambigous "Fruit", "Vegetable" and "Hot tray" which allows Kitchen staff to punish me by endless repetition and exclusion of items.

4. The new KMM has to be 100% pre-sealed factory certified Kosher items or intrinsically Kosher items such as whole, uncut Fruit and Vegetables. No manufacturing/repackaging of food in ADCRRs' non Kosher certified prison Kitchens. No buying of unmarked items.

5. The new KMM to be 2020 or newer USDA Guidelines compliant. Specifically it has to provide at least Seventeen and a half cups of fruit weekly, (three small pieces of fruit daily) 21 cups of milk weekly and 24 ½ cups of specifically varied vegetables a week. The August 2020 Vegetable variety is acceptable: green scallions; carrots; green peppers; tomatoes; cucumbers; summer squash all served during the course of an average week. (Ex. A3)

6. The KMM to have two hot meals daily, except on the Sabbath.

7. The Kosher for Passover menu to have two hot meals daily except on the sabbath and follow the pre-2015 ADCRR Kosher for Passover menu in content.

8. Provide special KMM Hot trays on national holidays approximating those of the General Menu. I.e. a turkey/stuffing/Apple pie dinner for thanksgiving and so on.


B. Access to the Court for myself, including the following materials to be provided to me by ADCRR:

1. U.S. Supreme Court reporters 2011-present.

2. OHIO State Reporter listing all case law 1993-present

7 A

3. Arizona State Reporter listing case law 1996 - Present.

4. Federal Reporters / Supplements covering at least the Arizona and OHIO Districts as well as the 6th and 9th Circuits.

5. The ability for me to do a Shepherds' / Westlaw citation report on any case I need.

6. OHIO Forms necessary for Motion to Reopen / motion to vacate / Petitions for Review in the OHIO Court of Appeals / Supreme Court.

7. OHIO Statutes 1994 - present, annotated.

8. OHIO Rules of Court / Rules of Criminal Procedure, annotated

9. Arizona Statutes, 1996 - present, annotated

10. Federal Section 2241 Habeas forms for the District Courts of OHIO and Arizona.

C. I would like this court to procedurally reinstate my timely status as it was on April 1, 2014 in all my cases in both Arizona and OHIO State and Federal courts, perhaps by:

1. Declaring DO 902 as a state impediment as defined by 28 U.S.C. § 2244(d)(1)(B), then finding I have overcome that impediment when ADCRR delivers all necessary materials listed in B. above.

2. Ordering the Pima County Superior Court to reopen my case there and ordering the Delaware County Court of Common Pleas to open both my 2000 and my 2014 cases. (or the state court of appeals to do the same, if procedures so require)

3. Find that any applicable 2011-present new Constitutional Law that I discover in the 2011-present U.S. Supreme court reporters have one year timely status upon my discovery as per 28 U.S.C §2244(d)(1)(C).

7 B

4. Finally I would like this court to find that the interests of Justice demand that I be allowed to file timely 2244(d)/AEDPA section 2254 Habeas or simply 2241 Habeas to overcome the timelimits exceeded due to DO902 s' denial of access to the courts

I have no access to case Law to definitively state what should be proper in cases like mine, but the equity lost due to DO902 needs to be restored so that I can bring my arguably non frivolous claims argued on appeal and on 1ST PCR by my Arizona Appointed Counsel, and argued pre trial by by OHIO appointed counsel, along with the sentencing claims and other future claims I might bring as soon as I'm furnished with all the necessary materials by ADCRR.

7 C

## EXHIBIT LIST

| EX. | # of Pages | Nature of Exhibit |
|-----|-----------|-------------------|
| A | 12 | AFFIDAVIT concerning "common fare" Menu |
| A1 | 5 | Federal BOP KOSHER Menu excerpt 2015 |
| A2 | 8 | ADCRR KOSHER MEAT MENU (KMM) History 1998-2013 |
| A3 | 2 | ADCRR KOSHER MEAT MENU 2016-August 1, 2020 (ELIMINATION) |
| A4 | 5 | ADCRR Current General Menu |
| A5 | 1 | ADCRR Store List Min/Med Custody |
| A6 | 3 | USDA GUIDELINES For Americans 2015-2020 Appendix 6 and 7 |
| H | 1 | Inmate Notification by Director Shinn Eliminating KMM 8/1/2020 |
| P | 2 | MY Inmate Letter contra the "common fare" Menu/Directors' response |
| W | 16 | ADCRR Policy DO902 ACCESS TO THE COURTS |
| AN | 14 | AFFIDAVIT in Support of Denial of Access Claim 1/14/2021 |

EXHIBIT A

<u>AFFIDAVIT</u> Concerning "COMMON FARE" diet

Mohave County Arizona SS

SS

I, FRANK KARL HERTEL #276681, am a Messianic Jewish inmate at Huachuca Unit, Kingman Complex, Arizona Department of Corrections Rehabilitation and Reentry (ADOCRR), whose sincerely held belief is that I must eat only food that is Kosher, per the Orthodox Jewish standard pursuant the Torah. I have been on ADOCRRs' Kosher diet since 2015, am fully aware of Kosher standards and practices, and have made the following observations concerning the "Common fare" diet which as of August 1, 2020 replaced and eliminated the previous Kosher diet instituted in 1998:

1. The content of my breakfast/lunch sack is now (Aug. 1, 2020) (Saturday):

a) Two 3 ounce containers of sealed, Kosher Hummus;

b) Two unidentified, unlabeled, unKosher packages of powder;

c) Kosher Coffee, Sugar Substitute, salad dressing, and drink mix packets;
   And the following Non-Kosher items prepared in Huachuca units' Non-Kosher Kitchen, None of which are labeled Kosher, or sealed, but merely bagged in the Kitchen by inmates:

d) Chopped Carrots and celery, approx. 1/2 cup;

e) the regular diets' peanut butter and jelly;

f) two cups of dry cereal (unidentified);

g) Four slices of bread from the allergy diet (white);

h) four unidentified cookies;

i) No Kosher water supply was offered in the chow hall;

j) Cold food only;

1

2. The content of my dinner sack Saturday Aug. 1, 2020 is:

a) Not identifiable as Kosher, thus not Kosher where:

b) a package of sunflower seeds had no identifiers at all;

c) a half-cup of Green peppers were cut in the non-Kosher Kitchen;

d) the two cookies, four slices of white bread, half cup of peaches (canned), and baggie of peanut butter were all removed from their original packaging in the non-Kosher Kitchen and repackaged; by inmates, rendering it all non-Kosher;

e) the entire meal was only cold food;

3. The content of my breakfast/lunch sack (Aug 2, 2020 – Sunday):

a) was identical to 1. above with two exceptions:

   i) One 3 oz hummus on Saturday was a mistake, it was replaced with the correct snack portion (1 oz.?) of chickpeas;

   ii) The cereal was now in pre-packaged sealed baggies which were, unfortunately NOT labeled Kosher.

4. Both the civilian Kitchen staff AND the Kitchen Corrections' officers confirmed that NONE of the pre-packaged, unmarked, baggies of snacks, cereal, or drink mixes were labeled Kosher NOR were the shipping boxes they came in marked Kosher, thus rendering everything I was made to eat on the Common Fare diet unkosher, with the exception of the Hummus;

5. The content of my Sunday dinner (Aug 2, 2020):

a) A Kosher, Vegan hot tray (Pasta with tomato sauce + vegetables)

b) None of the other substantial items were Kosher, having been processed in Huachucas' unkosher Kitchen by inmates, including a very small tossed salad – smaller than last weeks' salad – 4 slices of bread, beans,

c.) A note on the two cups of beans : They come in large sacks which, due to the low quality, have to be poured out on the Kitchen tables so that Kitchen staff can sort out the rocks and other foreign objects contained therein. The beans are then washed and cleaned, cooked, and poured into baggies in the non-Kosher certified Kitchen, rendering them absolutely unKosher;

6. Breakfast on Monday, August 3rd is a non-changing weekday breakfast:

a) Four bags of cereal, sealed but not marked Kosher;

b) Two slices of white bread bagged by inmates;

c) Two packages of powder, unlabeled, some Kind of unidentified Milk substitute;

d) A small baggie of Peanut/Sunflower butter;

e) Packet of Kosher coffee and two Kosher Sugar substitutes;

f) Kosher salt and pepper packets;

g) Note! This breakfast is cold, all other inmates are served a hot breakfast every day which also includes Kosher Milk. Also, this meal is marked No. 1 on the menu, but it is identical to meals 4, 7, 10, 13, 20, 23, 26, 29, 32;

7. Comparison of this weekly "Common fare" Breakfast with previous Kosher breakfast reveals the following missing (now) items:

a) Kosher Juice Box; (orange or apple juice)

b) Kosher Milk;

c) Kosher Eggs;

Note: The similarly situated inmates on the regular menu (90% of the yard, approximately,) still continue to receive Kosher Milk and Eggs;

8. Breakdown of Lunch, Monday August 3rd:

a) The only visibly Kosher item was a Vegan hot tray;

3

b.) the non-Kosher items include a bagged, chopped tossed salad, two slices of bread, two cookies, margarine;

c.) there was a Kosher drink packet and salt/pepper packets;

d.) Note: this was labeled meal 2 but it is identical to meals 8, 14, 21, 27, and 33. Furthermore, where the Hot tray is substituted with two cups of non-Kosher beans, this meal otherwise matches meals 5, 11, 24, and 30 also.

9. Comparison of "Common fare" and previous "Kosher" weekly lunch, Now:

a) Cheese is missing;

b) half cup of vegetables is missing;

c) Fresh fruit is missing;

d) All other inmates still receive cheese and fruits;

10. Weekday Dinner Sack Monday August 3, 2020 :

a) Two 3 oz. cups of Hummus, labeled Kosher or one slice of Vegan Salami and mustard packet;

b) the non-Kosher items are four slices of bread and a sealed vegan snack such as an unidentified, unspecified quantity of sunflower seeds;

c) Two cookies and a Kosher drink mix round out the meal;

d) Note: this is labeled meal 3, but is identical to meals 9, 15, 22, 28 and 34 – and when Hummus is substituted w/ salami it is also substantially identical to meals 6, 12, 25, and 31.; Fish is missing;

e) Warning: Kitchen staff did NOT give the mandated 1/2 cup of Vegetables, but only 1/4 cup of (non-menu) onions, shorting me and other inmates just as they have done in the past. This is common now that Kosher whole Vegetables are chopped in the non-

4

Vegan Salami + Mustard

Hummus

3  4  15  22  28  34

6  12  25  31

Kosher kitchen, rendering them non-kosher, as well as allowing Trinity Kitchen staff to "accidentally" give out short portions.

11. Comparison of USDA Standard "Healthy U.S.-Style Eating pattern," 2800 calories cited from 2015-2020 DIETARY Guidelines for Americans — Pages 80-81, the previous (last weeks) Kosher Diet ADOCRR and the new "Common fare" ADOCRR Vegan diet, Weekly amounts:

| | USDA | old KOSHER | new Common/vegan |
|---|---|---|---|
| a.) Vegetables | 24 ½ cups | 18 cups (approx) | 16 ¼ (approx.) |
| b.) Fruits | 17 ½ cups | 17 ½ cups | 1 cup |
| c.) Grains | 70 oz. | 49 oz (approx) | 84 oz. (approx) |
| d.) Dairy | 21 cups | 17 cups | 0 cups |
| e.) Seafood | 10 oz. | 12 oz | 0 cups/oz. |
| f.) Meats, eggs | 33 oz. | 19 oz. (approx) | 0 cups/oz. |
| g.) Nuts, Soy products | 6 oz | 0 oz. | 25 oz. ? |

h.) Note: The current _federal_ Kosher menu, as well as the ADOC Kosher menu at its 1998 inception meet or exceed the USDA guidelines in every category. Today's "Common fare" menu is a bread and cereal heavy unbalanced diet that has glaring shortfalls in Fruits, Vegetables, and obviously all animal based nutrients which are NOT compensated for with equivalent soy products. My (approximate) calculation shows that the "Common fare" menu must also only have 2000 calories, 800 short of the USDA mandate.

5

12. Comparison of punitive qualities of the various prison diets;

for example, a cold, bread and water meal is the quintessential

punishment food, thus:

A. examines how many cold meals per week are given per diet class.

B. examines the number of days between meal cycles, i.e. the variety

   offered. For the "common fare" diet 6. and 8. above establish that different

   meal numbers are actually identical, thus it is a two-day cycle.

C. examines how many slices of bread / portions of cold cereal are

   given per diet per week

D. examines the approximate Kosher content in %, this is based on

   Arizona District Court / 9th Circuit rulings see 13. below.

E. Ambiguity in the diet; i.e. are the items marked "Fruit" or "orange" in %.

|  | A | B | C | D | E |
|---|---|---|---|---|---|
| i) Federal Kosher menu 2015 EXH "A1" | 7 | 35 | 44 | 100 % | 8 % |
| ii) 1998 ADOCRR Kosher menu EXH "A2" | 9 | 14 | 14 | 100 % | 0 % |
| iii) 2001 ADOCRR Kosher menu EXH "A2" | 9 | 14 | 14 | 100 % | 0 % |
| iv) 2005 ADOCRR Kosher menu EXH "A2" | 13 | 14 | 64 | 80 % | 6 % |
| v) 2007 ADOCRR Kosher menu EXH "A2" | 13 | 2 | 57 | 75 % | 100 % |
| vi) 2016 (current to 2020) ADOC Kosher EXH "A3" | 13 | 2 | 57 | 50 % | 100 % |
| vii) Current "Common fare" see 1.-10. above | 13 | 2 | 70 | < 10 % | 100 % |
| viii) Current ADOCRR General menu EXH "A4" | 5 | 42 | 34 | < 10 % | 2 % |

From the above comparison it is plain that:

The "common fare" diet is more punitive than any other diet listed with

twice as many cold meals as the Federal Kosher diet, or the ADOCRR General

population diet (here almost three times as much). Likewise, there is only a

two day variation in the "common fare" diet where equally situated (General)

inmates have twenty one times (!) the variety and Federal Kosher inmates have over Seventeen times the variety of varied, interesting meals. I feel I'm being punished by being made to eat the same thing over and over again, especially when I see equally situated inmates with their variety of trays. Moreover, I'm not being made to eat steak over and over again, but as column C shows, the "common fare" diet consists mainly of Bread and cold cereal, more than twice as much as for equally situated inmates on the General menu. Next, the "common fare" diet has less than 10% Kosher content per volume where for example, the bread is produced by ADOC.RR in a non-Kosher facility – see Min/Med Custody Menu EXH "A5", white bread is item # 2727 (first on the list) and NOT marked Kosher – and most other items are processed in a non-Kosher Kitchen or purchased with no Kosher identifiers visible, thus punishing me by making me starve on less than 1000 calories a day should I choose to eat only the known Kosher items. Finally, the ambiguity in the diet is punitive, where in 1998, inter alia, the former menu stated "Zucchini", "Apple", "Fruit loop cereal", or "Kosher Salisbury entree" rather then the "common fare" diets consistant "Vegetable", "Fruit", "Cold cereal", or "Vegan entree". This is punitive because it allows the private Kitchen personnell to arbitrarily choose the same items over and over again; items that are obviously the cheapest to purchase and the least in calorie count, nutrition; For example, I have received celery as my vegetable several times in the last week even though it is not on the Kosher menu nor does it have a high nutritional or caloric content per the USDA. Finally, the Vegan "common fare" is punitive where ADOC is forcing me to become vegan, which I vehemently oppose on religious grounds, where other inmates can "choose" to be vegan,

7

13. I am familiar with *Ashelman v. Wawrzaszek*, 111 F.3d 674 (9th Circuit 1997), the Circuit decision that forced ADOCRR to create a Kosher diet in 1998. Here the Arizona District court found, and the 9th Circuit affirmed that:

   a) "a Kosher diet cannot be prepared in a standard prison kitchen," 111 F.3d 676.

   b) The Kosher diet should consist of "whole fruits, vegetables, nuts, tinned fish, dairy products, and Kosher cereals that would satisfy Kashruth," as demanded by Ashelman, 111 F.3d 677, and conceded by ADOCs' warden, 111 F.3d 678

   c) "we there fore reverse and remand to the district court ... to fashion an appropriate order requiring Ashelman to be provided a diet sufficient to sustain him in good health without violating the laws of Kashruth." 111 F.3d at 678, conclusion.

   I, too demand that I be treated like Ashelman, that none of my food be prepared, cooked, sliced, rebagged in ADOCRRs' non-Kosher prison kitchen; that I be fed whole fruits and vegetables, nuts, sealed Kosher fish and meat (111 F.3d at 675), dairy products and Kosher cereals that satisfy all aspects of Kashruth sufficient to sustain me in good health, in a varied, non ambigous five week menu cycle equivalent to the federal Kosher menu;

14. I am familiar with the Arizona District and 9th Circuit decisions which define the requirements of a healthy diet under the 8th Amendment to be in accordance with the U.S. Department of Agriculture (USDA) Mandates in its "Dietary Guidelines for Americans" - see *Graves v. Arpaio*, 2008 WL 4699770  No CV-77-0479-PHX-NVW  under J. Food

¶¶ 95-98 " 370. Therefore paragraph 95 of the Amended Judgment does not exceed the constitutional minimum by requiring Defendant Arpaio to meet or exceed the Department of Agriculture's Guide to Daily Food Choices ... " See also Graves v. Arpaio, 623 F.3d 1043 (9th Circuit 2010), in addressing the 8th Amendment food claim the court held "we cannot say that it was an abuse of discretion for the district court to order Arpaio to provide food that satisfied the Dietary Guidelines [of the USDA] " 623 F.3d at 1050-1051

I too, demand that ADOCRR comply with the USDA Dietary Guidelines for Americans (EXH "A6") so that my 8th Amendment rights to a healthy prison diet be met per Graves. As shown in 11. above ADOCRR does not meet USDA guidelines for nutrition or calories. Especially heinous is ADOCRRs' deprivation of fruit. On August 1ST my weekly fruit ration went from the USDA mandated 17 ½ Cups to just One Cup!;

15. My sincerely held beliefs concerning the consumption of Kosher food:

   a.) are virtually indistinguishable from the standard Orthodox Jewish beliefs established in Ashelman (see 13. above);

   b.) Mandate that I make a distinction between the clean and unclean, thus prohibits foods that are not labelled and certified Kosher, or not intrinsically Kosher;

   c.) I believe that whole, uncut Vegetables and fruits are intrinsi- cally Kosher, as is an egg cooked in its unbroken shell;

   d.) Mandate that no food cooked, cut, repackaged or processed in a non-Kosher certified Kitchen - as my present ADOCRR prison Kitchen - is permitted me to be eaten, other than sealed, Kosher certified food or foods intrinsically Kosher which may be heated, stored, and given out

to be eaten by me  even when heated, stored, or given out in a Non-Kosher certified Kitchen;

e) I sincerely believe that I am mandated to consume animals and animal products such as eggs, milk, cheese, and the animals listed as Kosher in Leviticus Chapter eleven. My belief in this area is based on the totality of the Torah inter alia the belief that NOT eating the passover Lamb disqualifies me from being part of the Jewish people who, when asked what their occupation was by Pharaoh (Genesis 47:3) replied that they and their forefathers were shepherds. Shepherds who ate Kosher animals, drank their milk and ate their cheese; I believe I need to eat animal products daily;

f) I sincerely believe that there were no Vegans in the Torah, and that the Vegan belief is the antithesis of the Jewish belief; my belief carried to its logical future conclusion would create a world populated by humans and their protected Kosher animals; Vegan beliefs' conclusion is a world in which animals are irrelevant and thus extinct.  Vegan belief is an abomination to me. I do not want to become Vegan, and believe that ADOCRRS' plot to make me Vegan is worse than if ADOCRR force fed me pork sausages;

g) I sincerely believe that the 2015 Federal Kosher menu (EXH "A1") and the old, 1998-2004 ADOCRR menus (EXH. "A2") were 100% Kosher and thus able to be eaten in accordance with my sincerely held beliefs. I demand that ADOCRR supply me with a Kosher menu that is substantially equivalent to those non-ambiguous, varied menus which ADOCRR had no trouble supplying in the past;

16. While on the "common fare" diet I've lost almost 10 pounds in three weeks and feel fatigued, my bowel movements irregular possibly from the diets severe lack of fruits and its omission of meat, fish, eggs, milk and cheese. I fear for my long term health;

17. ADOCRRs' deliberate indifference to my sincerely held beliefs is causing me mild depression and anxiety; I have lost all confidence in the government and agencies of Arizona, do not believe that they are sincere in Rehabilitating me nor wish me to reenter a society that is for the vast majority NOT Vegan. All my internal grievances concerning my Kosher diets' steady degradation over the past five years have been blatantly sidestepped or ignored;

   More I say not; Exhibits "A1" through "A6" are attached hereto;

08-26-2020

Date submitted

FRANK KARL HERTEL

Aug 26. 2020

Date witnessed

Notary Public

Nancy Crisalli
Notary Public
Mohave County, Arizona
My Comm. Expires 09-11-2020

11

EXHIBIT LIST FOR AFFIDAVIT concerning "Common fare" diet

| EXHIBIT | Name |
|---------|------|
| A 1 | Federal Kosher menu 2015 excerpt |
| A 2 | ADOC RR Kosher Menu History 1998-2013 excerpt |
| A 3 | ADOCRR Kosher menu 2016 - August 1, 2020 excerpt |
| A 4 | ADOCRR Current General Population menu excerpt |
| A 5 | ADOC RR Current Min/med Custody menu (store list) |
| A 6 | USDA Guidelines for Americans Appendix 6+7 (2015-2020) |

Note: new "Common fare" menu post July 2020 was
not made available to me in an official copy
by ADOCRR so I described it in detail in
the Affidavit pages 1-7