1

MDR

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9     Frank Karl Hertel,                    No.  CV 21-08044-PCT-JJT (ESW)

10                        Plaintiff,

11    v.                                    **ORDER**

12    David Shinn, *et al.*,

13                        Defendants.

14

15          On March 1, 2021, Plaintiff Frank Karl Hertel, who is confined in the Arizona State

16    Prison-Kingman in Kingman, Arizona, filed a pro se civil rights Complaint pursuant to

17    42 U.S.C. § 1983 (Doc. 1) and an Application to Proceed In Forma Pauperis. In a March 8,

18    2021 Order, the Court denied the deficient Application to Proceed and gave Plaintiff thirty

19    days to either pay the administrative and filing fees or file a complete Application to

20    Proceed In Forma Pauperis.

21          On March 23, 2021, Plaintiff filed a second Application to Proceed In Forma

22    Pauperis (Doc. 6). The Court will grant the second Application to Proceed, order

23    Defendant Shinn and Montiel to answer portions of the Complaint, and dismiss the

24    remaining claims and Defendants without prejudice.

25    **I.      Second Application to Proceed In Forma Pauperis and Filing Fee**

26          The Court will grant Plaintiff's second Application to Proceed In Forma Pauperis.

27    28 U.S.C. § 1915(a). Plaintiff must pay the statutory filing fee of $350.00. 28 U.S.C.

28    § 1915(b)(1). The Court will assess an initial partial filing fee of $38.53. The remainder of

the fee will be collected monthly in payments of 20% of the previous month's income credited to Plaintiff's trust account each time the amount in the account exceeds $10.00. 28 U.S.C. § 1915(b)(2). The Court will enter a separate Order requiring the appropriate government agency to collect and forward the fees according to the statutory formula.

## II.   Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. *Id.* at 681.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th

Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Id.* (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).

**III.    Complaint**

In his four-count Complaint, Plaintiff names as Defendants Arizona Department of Corrections (ADC) Director David Shinn and former Director Charles Ryan, Kitchen Manager Montiel, and Various Unknown Nutritionists/Registered Dieticians. In his Request for Relief, Plaintiff seeks revisions to ADC's food and access-to-the-court policies, the provision of various legal materials, and a "procedural[] reinstate[ment]" of his "timely status" in his Arizona, Ohio, and federal cases.

**A.    Counts One through Three – Food Policies and Customs**

Counts One, Two, and Three relate to ADC's food policies and Defendant Montiel's customs. In Count One, Plaintiff contends the policies and customs violate the First Amendment Free Exercise and Establishment Clauses and the Religious Land Use and Institutionalized Persons Act (RLUIPA). In Count Two, he claims they violate the Fourteenth Amendment Equal Protection Clause. In Count Three, he contends elimination of ADC's "Kosher Meat Menu" constitutes cruel and unusual punishment, in violation of the Eighth Amendment.

**1.    Count One – First Amendment and RLUIPA**

According to Plaintiff, when the Kosher Meat Menu was established in 1998, it contained 100% Kosher content and all of the foods were either "Factory Certified and Sealed Kosher, or intrinsically Kosher whole, uncut fruits and vegetables." (Doc. 1 at 3.)[1] He claims, however, that Defendant Ryan "changed/degraded" the Kosher Meat Menu multiple times over the years, and, by the time Plaintiff first began receiving the Kosher Meat Menu, it only contained 50% Kosher content. (*Id.*)

. . . .

---

[1] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

Plaintiff alleges Defendant Montiel, in March 2019, took advantage of Kosher Meat Menu "ambiguities created by [Defendant] Ryan" and "starting to cut [Plaintiff's] vegetables, rendering them unkosher." (*Id.* at 3-4.) He claims that in September 2019, Defendant Montiel replaced Plaintiff's kosher, whole fresh fruits with unkosher, kitchen-processed canned fruit. (*Id.* at 4.) Plaintiff states he continues to receive unkosher, kitchen-processed fruit despite filing a grievance regarding this issue, and continues to receive unkosher, cut vegetables because Defendant Ryan "found cutting 'appropriate'" in response to Plaintiff's grievance regarding this issue. (*Id.*)

Plaintiff also contends his "sincerely held Jewish beliefs mandate that [he] eat Kosher animal products daily." (*Id.* at 3.) However, Defendant Shinn eliminated the Kosher Meal Menu in August 2020 and replaced it with a vegan "Common Fare Menu" containing only 10% "personally verifiable" certified Kosher content. (*Id.*) Plaintiff "vehemently objected" to the elimination of the Kosher Meat Menu, stating that he "was unwilling to be converted to the vegan religious beliefs of other religions." (*Id.*) However, the Pastoral Activities Administrator, who responded on Defendant Shinn's behalf, stated that "'notwithstanding' [Plaintiff's] sincerely held religious beliefs," the elimination of the Kosher Meat Menu was "appropriate[,] without showing proof of why this might be so." (*Id.*) Thus, Plaintiff was taken off the Kosher Meat Menu and placed on the Common Fare Menu. (*Id.*)

### a. Free Exercise Clause and RLUIPA

Plaintiff contends Defendants Shinn and Ryan's menu policies and Defendant Montiel's kitchen customs place an unreasonable burden on the exercise of his religion by preventing him from "being able to daily eat: (1) Kosher; [and] (2) Kosher animal products." (*Id.* at 4.) Plaintiff alleges that there is no compelling governmental interest to justify the historic degradation of the 1998 Kosher Meat Menu or the elimination of the Kosher Meat Menu and that when he requested Defendant Shinn provide a compelling governmental interest, Defendant Shinn was "silent/unable." (*Id.*) Plaintiff claims there are "obvious, re[a]sonable alternatives" to Defendant Shinn's policy eliminating the Kosher

Meat Menu, such as reinstating the prior, 100% Kosher-content Kosher Meat Menu, which he believes is an "easy alternative" that "overwhelms any perceived governmental interest which may exist." (*Id.* at 5.) He also asserts that Defendant Shinn's policy eliminating the Kosher Meat Menu violates Plaintiff's "free exercise" right to consume Kosher animal products because the policy "effectively negated" a Ninth Circuit Court of Appeals decision "to establish the [Kosher Meat Menu]."

**b.      Establishment Clause**

Plaintiff asserts Defendant Shinn had a "plainly non-secular" purpose in eliminating the Kosher Meat Menu because Defendant Shinn stated that the policy eliminating the Kosher Meat Menu was done "so 'religious and Kosher diets' [could] be replaced by the [Common Fare Menu,] 'which meets religious requirements.'" (*Id.*) He claims that Defendant Shinn's policy favors inmates of non-Jewish religions because their "lower" religious standards allow them to eat from the Common Fare Menu or the "General Menu" without violating their beliefs and that "those of lower religious dietary standards," such as Vegan Buddhists or Seventh Day Adventists, were "either advanced . . . or unaffected by [the] policy change." (*Id.* at 4-5.) According to Plaintiff, the elimination of the Kosher Meat Menu is "coercive" because it forces him to choose between the Common Fare Menu, which is only 10% Kosher, and the General Menu, which is only 5% Kosher. (*Id.* at 4.) He contends elimination of the Kosher Meat Menu had the "primary effect" of "inhibit[ing his] Kosher animal product consumption beliefs" because there no longer is a Kosher Meat Menu and because his indigency prevents him from otherwise purchasing Kosher animal products. (*Id.* at 5.) Finally, Plaintiff alleges the policy fosters excessive "entanglement with [Plaintiff's] religion" because ADC has historically "sought to suppress and degrade [his] Jewish Kosher/Kosher animal product consumption beliefs by constantly modifying/degrading the [Kosher Meat Menu]." (*Id.*)

**2.      Count Two – Equal Protection**

Plaintiff contends that as a Jew, he is treated differently. (*Id.* at 6.) He claims inmates on the General Menu receive meat, dairy products, and eggs; special meals on national

holidays; and two hot meals per day. (*Id.* at 6-7.) In contrast, he does not receive meat, dairy products, and eggs on the Common Fare Menu; does not receive special meals on national holidays on the Kosher Meal and Common Fare Menus;[2] received only one hot meal per day on the Kosher Meat Menu; and receives no hot meals on the Sabbath and only one hot meal on other days on the Common Fare Menu. (*Id.*)

Plaintiff asserts that the amount of food on the Kosher for Passover Menu has decreased by twelve pounds since Passover 2014 and that since 2015, he has lost weight every Passover because of the "caloric/nutritional insufficiency." (*Id.* at 7.) In contrast, inmates on the General Menu "were not starved during the same week" and "were not forced by the Directors' food policy to lose weight." (*Id.*) Plaintiff additionally contends he received two hot meals per day on the Kosher for Passover Menu, but received no hot meals during Passover on the Common Fair Menu, "plainly making [the ADC's] discrimination religious." (*Id.* at 6.)

Plaintiff alleges the General Menu is specific, providing for "carrots" rather than "vegetables" and "peaches" rather than "fruit," and, therefore, is not subject to being arbitrarily tampered with by the kitchen staff. (*Id.* at 7.) In contrast, the Kosher Meat and Common Fare Menus are allegedly ambiguous and, therefore, allow Defendant Montiel, "by his personal custom," to disregard the registered dieticians' recommendations and "choose what to serve." (*Id.* at 6.) According to Plaintiff, while the General Menu is based on a varied, 42-day cycle, he receives food on "monoton[ous] two to four[-]day cycles" and Defendant Montiel selects "the cheapest, most unpopular fruits, vegetables and hot trays." (*Id.*)

Plaintiff further contends that Defendants Ryan and Shinn's food policies and Defendant Montiel's customs "specifically discriminate[] against [him] as a Jew." (*Id.* at 7.) According to Plaintiff, "[e]ating is a holy ceremony per [his] sincerely held beliefs," but he does not have "the same reasonable opportunity to pursue [his] faith" during meals

---

[2] Plaintiff contends inmates on the General Menu received turkey, stuffing, gravy, and cranberry sauce for Thanksgiving, whereas he received two cups of non-Kosher beans. (Doc. 1 at 6.)

as inmates of other religions who are on the General Menu. (*Id.*) While inmates on the General Menu can "thank [their] creator for the food [ADC] provides," he cannot do so because his faith does not permit him to eat "the overwhelming[ly] non[-]Kosher content" he is served and he no longer receives the animal products he is commanded to eat. (*Id.*) Likewise, he cannot give thanks for "the starvation [he] experience[s] during Passover," the "punitive cold food" he is served during Passover, or the meals he receives during national holidays, when he is "deliberately excluded for being a Jew." (*Id.*)

Plaintiff claims there are "obvious, easy alternatives" to Defendants' discriminatory food policies and customs" and these alternative outweigh any ADC interests. (*Id.* at 8.) Specifically, he claims: it would cost "nothing" to make the Kosher Meat and Common Fare Menus unambiguous; the cost of providing a Kosher turkey "TV Dinner" for Thanksgiving is negligible; ADC could provide him with Kosher animal products by returning to the Kosher Meat Menu; ADC could prevent his starvation and weight loss during Passover at a "plainly modest cost" by returning to the pre-2015 Kosher Passover Menu; and ADC could easily and cost-effectively provide him with two hot Kosher meals per day by returning to the pre-2005 Kosher Menu or following the Federal Bureau of Prison's (BOP) Kosher Menu. (*Id.*) Additionally, Plaintiff asserts he has "no alternatives" because he is dependent on ADC for his food; his requested accommodations will not impact guards or other inmates because the proper accommodations previously existed without problems and currently exist in the federal prisons; he is only requesting a return to the prior Kosher Meat and Kosher Passover Menus "with only minor modifications for national holidays and diversity of menu selection"; and "cost or menu simplification were never given much weight by the 9th Circuit." (*Id.*)

### 3.   Count Three – Cruel and Unusual Punishment

Plaintiff alleges the United States Department of Agriculture's (USDA) Guidelines "are used by both the District Court of Arizona and the 9th Circuit as the de facto Eighth Amendment food standard" and mandate "a weekly fruit intake of seventeen-and-a-half cups of fruit." (*Id.* at 9.) Plaintiff claims that while the Kosher Meat Menu met this

requirement and met the vegetable requirement "until the menu ambiguity allowed cutting of vegetables," Defendant Shinn's elimination of the Kosher Meat Menu resulted in the elimination of 94 percent of Plaintiff's weekly fruit intake. (*Id.*) He contends that the Common Fare and General Menus only provide for one cup of fruit per week and that menus "so grossly lacking in fruit" are presumptively unhealthy, are unhealthy under the USDA Guidelines, and are "insufficient to sustain [Plaintiff] in good health." (*Id.* at 9, 11.) Plaintiff also asserts the Common Fare Menu provides insufficient vegetable portions, subjects him to arbitrary punishment because it is ambiguous,[3] and is "punitive" because it contains three times as many cold meals as ADC's General Menu or BOP's Kosher menu, twice as many bread/cereal portions as ADC's General Menu, and significantly more bread/cereal portions than the BOP's Kosher menu. (*Id.* at 9-10.)

Plaintiff alleges "[Defendant] Shinn and/or his Register[]ed Dietician and/or [Defendant] Montiel actively or constructively knew that the gross violation of the USDA Guidelines . . . would necessarily produce a grave risk to [Plaintiff's] health." (*Id.* at 11.) He claims Defendant Shinn's "failure to take the easily available measure of reinstating the previous, healthy Kosher Meat Menu" establishes Defendant Shinn's deliberate indifference and establishes a violation of Plaintiff's right to be fed a menu sufficient to sustain him in good health. (*Id.*)

Plaintiff alleges that within three weeks of being on the Common Fare Menu, he lost weight, was feeling nauseous and fatigued, and was having irregular bowel movements "due to the severe lack of fruit and omission of animal products." (*Id.* at 9-10.) He claims the Common Fare Menu is a "repetitive[,] two[-]day meal cycle," as opposed to the General Menu's 42-day cycle and BOP's 35-day cycle, and this repetition makes him "physically sick since nutrient variety is lacking due to kitchen custom." (*Id.* at 10.) Plaintiff asserts that he fears for [his] long[-]term health" because he has seen many inmates who were on

---

[3] Plaintiff asserts that when he first filed a grievance regarding the "vegetable ambiguity," the kitchen staff punished him by only feeding him celery for a week and withholding carrots, cucumbers, green peppers, onions, scallions, zucchini, and tomatoes. (Doc. 1 at 10.)

the fruit- and vegetable-deficient General Menu develop diabetes, high blood pressure, colorectal cancer, and other diet-related diseases, and that it is "inevitable" that he will contract diabetes, cancer, hypertension, and other chronic diseases if he remains on either of the fruit- and vegetable-deficient diets. (*Id.* at 9-10.)

Plaintiff also claims he is being "spiritually punished" on the Common Fare Diet because less than 10 percent of the caloric content is "personally verifiable" Kosher content and because Defendant Shinn is forcing him to be "converted to a vegan belief system," which Plaintiff is "vehemently opposed to." (*Id.* at 10.) Plaintiff contends that "[o]nly [his] fervent prayers" have kept him from "sinking into depression and anxiety" because of Defendants Ryan and Shinn's "blatant attempt to destroy [his] health." He claims Defendant Shinn's "strategy is obvious" and his "lawyers will no doubt milk this civil rights violation for as long as they can and kill some Jewish inmates with their grossly unhealthy food over the course of the next few years." (*Id.* at 11.)

Plaintiff asserts that he received deliberately indifferent responses to his grievances, including some from Defendants Ryan and Shinn, "who were plainly on an anti-Semitic v[e]ndetta to make [Plaintiff's] Kosher Meat Menu more and more punitive each year since 1998." (*Id.* at 10-11.) He claims neither Defendant Ryan nor Defendant Shinn "ever gave [Plaintiff] the slightest relief" and Defendant Ryan was "even unwilling to change the ambiguous 'vegetable' . . . back to the specific 'tomato,'" which "aid[ed] and abett[ed] kitchen staff in their arbitrary punishment of Jewish inmates." (*Id.* at 11.)

### B.   Count Four – Access-to-the-Court Policies

Plaintiff alleges ADC's Department Order (DO) 902 denies him meaningful access to the courts, in violation of his rights to due process and equal protection, by depriving him of "the basic tools necessary to present, inter alia, meaningful 'old law statutes' sentencing claims in a timely manner to the Ohio and Arizona courts." (*Id.* at 12, 18.)

Plaintiff claims DO 902 violates his equal protection rights, asserting that he is treated differently because a wealthy individual could have purchased the necessary materials and a non-incarcerated individual could have accessed them physically or online

in a non-ADC library. (*Id*. at 18.) Plaintiff also asserts that because he is an indigent inmate, Defendant Shinn is "constitutionally mandated to assist [him] in preparing and filing . . . meaningful legal papers in both [his] Ohio and Arizona criminal cases" by providing him with "an adequate law library or adequate assistance from persons trained in the law." (*Id*. at 18-19.)

Plaintiff contends, however, that DO 902 is an "impediment" to filing out-of-state claims and in-state "old law" claims. (*Id*. at 19.) He alleges DO 902 denies him access to any out-of-state legal materials and to Arizona law "archive services"; provides no notice of new Supreme Court decisions defining retroactive new constitutional law, which he "might use to file federal claims under [28 U.S.C.] § 2244(d)(1)(C)"; and provides no access to state or federal caselaw reporters, caselaw to "meaningfully define the terms necessary to make a meaningful argument for . . . § 2244(d)(1) through (2) timeliness," or "caselaw in general." (*Id*. at 12, 19.)

Plaintiff claims DO 902 has made his "past, present, and future petitions to any court futile because [his] situation is unique." (*Id*. at 19.) He contends he is unaware of any other ADC inmate who was tried in absentia, not arrested or sentenced for eleven years, and who needs access to materials necessary to file in state, district, and circuit courts in two states simultaneously. (*Id*.) He claims that due to DO 902, he was denied meaningful access to the Ohio state courts to file criminal and civil petitions in that state; was unable to access the 1996 Arizona statutes necessary to file meaningful Arizona criminal petitions; and the petitions he ultimately filed were "denied due to technical violations of Ohio, Arizona, or Federal procedural rules" that he was unaware of because DO 902 denied him "access to caselaw defining the legal terms of said procedural rules." (*Id*. at 12.)

### 1.    General Allegations Regarding Plaintiff's Criminal Cases

Plaintiff states that he was indicted in Arizona and Ohio in 2000, was tried in absentia in Arizona in 2001 for a violation of the 1996 Arizona statutes, but was not arrested or sentenced in Arizona until 2012. (*Id*. at 12, 15.) Subsequently, Plaintiff was transferred to Ohio in 2013 pursuant to the Interstate Agreement on Detainers (IAD). (*Id*. at

12.) He claims the Ohio prosecutor, to compel Plaintiff to plead, reindicted Plaintiff in 2014 on "identical charges with force specifications." (*Id.*) Plaintiff alleges his attorney sought to dismiss the 2000 and 2014 indictments, raising constitutional, statutory, and IAD speedy trial grounds. (*Id.* at 12-13.) He claims he pleaded guilty to the 2000 Ohio indictment, and the 2014 Ohio indictment "was improperly dismissed without prejudice," even though the IAD mandated dismissal "with prejudice." (*Id.* at 13.)

### 2.    Allegations Regarding Plaintiff's Ohio Cases

Plaintiff claims that in his 2000 Ohio case, his attorney filed an *Anders*[4] brief without notifying Plaintiff. (*Id.*) He alleges that in his 2014 Ohio case, his attorney failed to file a notice of appeal, despite Plaintiff's instruction to file a notice of appeal and raise IAD grounds. (*Id.*)

Plaintiff contends he immediately tried to file a motion for delayed appeal in the 2014 case, but he was unable to file a meaningful motion because he was "completely unaware of the Ohio procedural/legal/and factual basis" for his motion and "lacked the forms, caselaw and Ohio statutory sources to do so effectively" because DO 902 specifically prohibits ADC from providing him with "forms, documents, or any legal materials from other states." (*Id.*) The Ohio Court of Appeals denied the motion for delayed appeal "on procedural grounds unknown to [Plaintiff]" and for "failure to state a claim, quoting caselaw [Plaintiff] had no access to." (*Id.*)

Plaintiff asserts that because the motion for delayed appeal was denied in the 2014 case, he was "unable to include the critical case 2014 issues" in his pro se brief in the 2000 case. (*Id.*) He also claims that because of DO 902, he did not know his rights under *Anders* "or its 6th Circuit or Ohio State progeny" and was "unable to make any meaningful claims" because he "wholly lacked the ability to know, research or understand any Ohio legal basis and its resultant factual basis." (*Id.* at 13-14.) Thus, Plaintiff only included in his pro se brief in the 2000 case issues from his pretrial motion to dismiss and "some arguments [his] 81[-]year[-]old mother sent [him]." (*Id.* at 14.) Plaintiff contends the Ohio Court of Appeals

---

[4] *Anders v. California*, 386 U.S. 738 (1967).

refused to rule in the 2000 case on any of Plaintiffs "2014 claims" because the court had previously denied his motion for delayed appeal in the 2014 case. (*Id.*)

Plaintiff also alleges that because DO 902 denies him access to Ohio materials, he was unable to file a meaningful: petition to the Ohio Supreme Court appealing the denial of the motion for delayed appeal; application to reopen in the 2000 and 2014 cases; petition for post-conviction relief; and state-court habeas petition. (*Id.*) He contends his mother sent him relevant Ohio information "bit by bit over the course of three years," so the petition for post-conviction relief he ultimately filed was denied on "procedural/untimeliness grounds" based on statutes Plaintiff had no access to, and he did not receive a review of the merits of his claims. (*Id.* at 14-15.) Plaintiff claims his state-court habeas petition was denied "because [he] was unaware that . . . Ohio habeas courts do not have jurisdiction over prisoners housed out of state." (*Id.* at 14.) He also asserts he has no access to Ohio's post-conviction procedures and, therefore, he has "no idea whether [he has] a procedural way to raise [his] sentencing claims in Ohio state courts." (*Id.* at 14.)

Plaintiff alleges that if DO 902 had not completely denied him access to Ohio materials, he would have read: the Ohio statutes under which he was sentenced; "ascertain[ed] that the 19 to 95 year sentence imposed . . . was plainly excessive per the [Ohio Revised Code], *Apprendi/Blakely*,[5] and [because] Ohio first[-]time offenders w[]ere mandated to be sentenced to concurrent minimum definite sentences of three years"; timely raised the sentencing issues in his pro se appeal; timely filed a federal habeas petition raising all his Ohio issues; and "plainly [would have been] resentenced to a lesser term <u>or</u> had [his] Ohio sentence/conviction dismissed with prejudice." (*Id.* at 14-15.)

### 3.   Allegations Regarding Plaintiff's Arizona Case

Plaintiff claims DO 902 denies him access to the statutes under which he was indicted, convicted, and sentenced because DO 902 does not provide archival services for Arizona law. (*Id.* at 15.) After Plaintiff was "finally able to find the relevant old Arizona

---

[5] *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004).

statutes in the legal boxes of older inmates," he filed a pro se notice of second petition for post-conviction relief, which the trial court found timely, but the Arizona Court of Appeals found untimely pursuant to a state-court decision to which Plaintiff had no access. (*Id.* at 5-16.) He contends that if DO 902 had not denied him access to the 1996 Arizona statutes and caselaw, he either would have filed a timely notice of second petition for post-conviction relief or "would have known he was untimely"[6] and filed a federal habeas petition raising only his appellate claims and the claims from his first petition for post-conviction relief, and then sought to stay the federal habeas action while filing a motion for a "delayed, out of time" second petition for post-conviction relief. (*Id.* at 16.)

Plaintiff also contends that when he attempted to file a notice of third petition for post-conviction relief, the trial court denied his notice because he did not cite any legal basis for his claims. (*Id.*) He claims that he failed to do so because DO 902 prevented him from "meaningful access to the legal and factual bases of any for future claims." (*Id.*)

### 4.    Allegation Regarding Plaintiff's Federal Cases

Plaintiff contends DO 902 denies him access to federal caselaw and reporters from which he might have been able to determine the timeliness of a federal habeas corpus petition and, therefore, his Arizona and Ohio federal habeas corpus petitions were "ultimately found untimely because of technical violations of 28 U.S.C. § 2244(d) . . . ." (*Id.* at 17-18.) Specifically, Plaintiff claims DO 902 denies him "time-sensitive knowledge of relevant, newly recognized 'constitutional rights asserted by the U.S. Supreme Court'" for purposes of § 2244(d)(1)(C), and prevents him from using caselaw to define "properly filed application for state post-conviction or other collateral review" in § 2244(d)(2), "conclusion of direct review" in § 2244(d)(1)(A), "impediment to filing" in § 2244(d)(1)(B), and "factual predicate" or "due diligence" in § 2244(d)(1)(D). (*Id.* at 17-18.)

---

[6] He claims he was "proceed[ing] under the assumption that [he] was timely per the plain reading of Ariz. R. Crim. P 32.4 eff[.] 2014[,] which defines [post-conviction relief] timeliness as being depend[e]nt on the issuance of the August 15, 2015 <u>mandate</u>, not the July 1, 2015 <u>decision</u> as per [*State v. Lopez*, 323 P.3d 1164 (Ariz. Ct. App. 2014)]."

**IV.     Discussion of Plaintiff's Claims**

Although pro se pleadings are liberally construed, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. *Id.*

A suit against a defendant in his or her *individual* capacity seeks to impose personal liability upon the official. *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). For a person to be liable in his or her individual capacity, "[a] plaintiff must allege facts, not simply conclusions, that show that the individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). By comparison, a suit against a defendant in his or her *official* capacity represents only another way of pleading an action against the entity that employs the defendant. *Kentucky v. Graham*, 473 U.S. at 165. That is, the real party in interest is not the named defendant, but the entity that employs the defendant. *Id.* To bring a claim against an individual in his official capacity, a plaintiff must show that the constitutional deprivation resulted from the entity's policy, custom, or practice. *Id.*; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**A.     Individual Capacity**

Plaintiff's allegations are too vague and conclusory to plausibly show that any Defendant was personally involved in the deprivation of his civil rights. Plaintiff fails to describe how and when Defendants Ryan and Shinn were involved in the promulgation of the challenged policies, and he has not described his grievances in sufficient detail to support a claim against these Defendants for failing to act. Accordingly, the Court will dismiss without prejudice the individual capacity claims against Defendants.

**B.     Official Capacity**

**1.     Defendant Ryan**

Defendant Ryan is no longer the ADC Director and lacks the authority to grant the injunctive relief Plaintiff seeks. Because the current Director, Defendant Shinn, is already

a party, the Court will dismiss Defendant Ryan. *Cf.* Fed. R. Civ. P. 25(d) (permitting the court to order substitution of a public officer who is a party in an official capacity when the party ceases to hold office while the action is pending).

### 2. Defendant Unknown Certified Nutritionists/Registered Dieticians

Plaintiff's official capacity claims against Defendant Unknown Certified Nutritionists/Registered Dieticians are duplicative of his claims against Defendant Shinn. Thus, the Court will dismiss without prejudice Defendant Unknown Certified Nutritionists/Registered Dieticians.

### 3. Counts One through Three

Liberally construed, Plaintiff has stated RLUIPA and free exercise claims against Defendants Shinn and Montiel in their official capacities (Count One); an Establishment Clause claim against Defendant Shinn in his official capacity (Count One);[7] and equal protection (Count Two) and Eighth Amendment (Count Three) claims against Defendants Shinn and Montiel in their official capacities. The Court will require Defendants Shinn and Montiel to answer these claims.

### 4. Count Four

#### a. Access to the Courts

Liberally construed, Plaintiff has stated an access-to-the-courts claim in Count Four against Defendant Shinn. The Court will require Defendant Shinn to answer this claim.

#### b. Equal Protection

Generally, "[t]o state a claim . . . for a violation of the Equal Protection Clause . . . [,] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). As to his access to the courts, Plaintiff has not alleged he is a member of a protected class. *See Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999) ("[I]ndigent prisoners are not a suspect class.").

---

[7] Plaintiff does not raise an Establishment Clause claim against Defendant Montiel.

TERMPSREF

The United States Supreme Court has also recognized "successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also SeaRiver Maritime Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Even under this standard, Plaintiff has failed to state a claim. Plaintiff has failed to allege that he was treated differently than other similarly situated individuals and that there was no rational basis for treating him differently.

Plaintiff claims his "situation is unique" because he is unaware of any other inmate who was tried in absentia, not arrested or sentenced for eleven years, and who needs access to materials necessary to file in state, district, and circuit courts in two states simultaneously. (*Id.* at 19.) Plaintiff's allegation that he is uniquely impacted by DO 902 is not sufficient to demonstrate that he was intentionally treated differently from similarly situated individuals. In any event, Plaintiff's lack of awareness is immaterial: it is not reasonable to assume that Plaintiff is the only inmate affected by the provisions of DO 902 that allegedly deny access to archival Arizona statutes, out-of-state materials, and caselaw relating to habeas corpus definitions and newly recognized constitutional rights.

Thus, the Court will dismiss without prejudice Plaintiff's equal protection claim in Count Four.

## V.     Warnings

### A.     Release

If Plaintiff is released while this case remains pending, and the filing fee has not been paid in full, Plaintiff must, within 30 days of his release, either (1) notify the Court that he intends to pay the unpaid balance of his filing fee within 120 days of his release or (2) file a <u>non</u>-prisoner application to proceed in forma pauperis. Failure to comply may result in dismissal of this action.

. . . .

. . . .

**B.     Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

**C.     Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. *See* LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**D.     Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's second Application to Proceed In Forma Pauperis (Doc. 6) is **granted**.

(2)     As required by the accompanying Order to the appropriate government agency, Plaintiff must pay the $350.00 filing fee and is assessed an initial partial filing fee of $38.53.

(3)     Defendants Ryan and Various Unknown Nutritionists/Registered Dieticians are **dismissed** without prejudice.

(4)     Plaintiff's equal protection claim in Count Four is **dismissed** without prejudice.

(5)     Defendant Shinn, in his official capacity only, must answer the RLUIPA, Free Exercise Clause, and Establishment Clause claims in Count One; the Equal Protection

claim in Count Two; the Eighth Amendment claim in Count Three; and the access-to-the-courts claim in Count Four.

(6)     Defendant Montiel, in his official capacity only, must answer the RLUIPA and Free Exercise Clause claims in Count One; the Equal Protection claim in Count Two; and the Eighth Amendment claim in Count Three.

(7)     The Clerk of Court must send Plaintiff a service packet including the Complaint (Doc. 1), this Order, and both summons and request for waiver forms for Defendants Shinn and Montiel.

(8)     Plaintiff must complete[8] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(9)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Complaint on a Defendant within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

(10)     The United States Marshal must retain the Summons, a copy of the Complaint, and a copy of this Order for future use.

(11)     The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order.

(12)     A Defendant who agrees to waive service of the Summons and Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff, **within**

---

[8] If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

**30 days of the date of the notice and request for waiver of service** pursuant to Federal Rule of Civil Procedure 4(d)(1)(F) to avoid being charged the cost of personal service.

(13)   The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must:

(a)   personally serve copies of the Summons, Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required. Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(14)   Defendants Shinn and Montiel must answer the relevant portions of the Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(15)   Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

. . . .

. . . .

. . . .

1      (16)   This matter is referred to Magistrate Judge Eileen S. Willett pursuant to Rules

2  72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as

3  authorized under 28 U.S.C. § 636(b)(1).

4      Dated this 23rd day of April, 2021.

5

6                            Honorable John J. Tuchi

7                            United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28