KAB

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frank Karl Hertel, | No. CV 21-08044-PCT-JJT (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| David Shinn, et al., | |
| Defendants. | |

Plaintiff Frank Karl Hertel, who is currently confined in the Arizona State Prison-Kingman, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court are Plaintiff's Motions for Preliminary Injunction (Docs. 27, 138) and the Magistrate Judge's Report and Recommendation (Doc. 80).

**I.      The Magistrate Judge's Report and Recommendation**

**A.      The Proposed First Amended Complaint**

In his proposed First Amended Complaint, Plaintiff alleges as follows. In Count One, Plaintiff alleges claims under the First Amendment and RLUIPA based on the following facts. On August 1, 2020, Defendant Arizona Department of Corrections (ADC) Director Shinn eliminated the Kosher Meat Menu and replaced it with the vegan Common Fare Menu, which violates Plaintiff's religious beliefs because he is required to eat Kosher animal products daily. (Doc. 79 at 1.) In Count Two, Plaintiff alleged a Fourteenth Amendment equal protection claim based on his allegations that he is Jewish and the ADC discriminates in the provision of meal plans given to prisoners of the Jewish faith. (*Id.* at 6.) In Count

Three, Plaintiff alleged an Eighth Amendment claim of cruel and unusual punishment on the basis that his calorie intake is insufficient. (*Id.* at 9.) In Count Four, Plaintiff alleges a denial of access-to-the-courts claim based on his allegations that ADC Department Order 902 denies him access to out-of-state materials, provides no Arizona state law archive services, and provides no access to state or federal case law reporters or case law in general (*Id.* at 16.) Plaintiff alleged that DO 902 section 3.4.1 "prohibits all ADCRR sources such as my prison law library, paralegal, or any other legal assistants from providing me access to 'forms, documents, or any legal material from other states.'" (*Id.* at 17) Plaintiff alleged that his appeals and petitions for post-conviction relief filed in Ohio and Arizona were denied due to his lack of access to the proper forms and case law. (*Id.* at 17-20.)

In Count Five, Plaintiff alleged that DO 902 denies Plaintiff the ability to read, cite, and discuss case law in violation of Plaintiff's First Amendment right to freedom of speech. (*Id.* at 24.) In Count Six, Plaintiff alleged "due process/obstruction of justice/right to fair proceedings" on the basis that DO 902 restricts his ability to comply with state and federal rules of civil procedure. (*Id.* at 25.) Plaintiff alleged that "Director Shinn has a constitutionally mandated affirmative duty to help indigent inmates like Plaintiff prepare meaningful, adequate and effective legal papers to file in his criminal and conditions of confinement cases." (*Id.*) In Count Seven, Plaintiff alleges a Fourteenth Amendment equal protection claim based on his allegations that DO 902 denies him the same access to necessary legal materials because he is indigent that is provided to prisoners who can purchase forms. (*Id.* at 26.)

Plaintiff requested injunctive and declaratory relief and compensatory and punitive damages. (*Id.* at 29-31.) Plaintiff included requests for relief in the form of "immediate release from prison" and transfer to Canada. (*Id.* at 30.)

**B.     Screening of the Proposed First Amended Complaint and the Report and Recommendation**

On screening under 28 U.S.C. § 1915A(a), the Magistrate Judge determined that Plaintiff stated the following claims in his First Amended Complaint: (1) RLUIPA and First

Amendment free exercise claims against Defendants Shinn and McGill in their official capacities in Count One; (2) a First Amendment Establishment Clause claim against Defendant Shinn in his official capacity in Count One; (3) Fourteenth Amendment equal protection and Eighth Amendment claims in Count Two against Defendants Shinn and McGill in their official capacities; (4) Eighth Amendment claims against Defendants Shinn and McGill in their official capacities in Count Three, (5) a First Amendment claim against Defendant Shinn in his official capacity in Count Five, (6) a Fourteenth Amendment due process claim based on denial of access to the courts against Defendant Shinn in his official capacity in Count Six, and (7) a Fourteenth Amendment equal protection claim against Defendant Shinn in his official capacity in Count Seven. (Doc. 78.)

The Magistrate Judge issued a Report and Recommendation recommending that the Court dismiss the claims against the named Defendants to the extent the Defendants were named in their individual capacities because the allegations were too vague and conclusory to show that the individual defendants were personally involved in the deprivation of Plaintiff's civil rights. (Doc. 80.) Because Plaintiff only stated claims against Defendants in their official capacities, the Magistrate Judge recommended that Plaintiff's request for punitive damages be dismissed (*Id.*) The Magistrate Judge further recommended that Plaintiff's requests for relief in the form of release from prison and transfer to Canada be dismissed because they are not forms of relief available in this action. (*Id.*)

### C. Plaintiff's Objections

In his objection to the Magistrate Judge's Report and Recommendation, Plaintiff argues that Defendant Shinn is "ultimately responsible for the actions of all ADCRR employees and the actions of those contracted in ADCRR facilities" and McGill directly participated in kitchen customs as the Trinity Complex Kitchen Manager. (Doc. 93 at 3.) Plaintiff asserts that the "Defendants knew or should have known" that the policies in question would result in a violation of his constitutional rights.

. . . .

. . . .

**D.  Legal Standard**

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure, parties may file objections to a magistrate judge order within fourteen days after being served with a copy of the order. The Court must then consider these objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

**E.  Discussion**

There is no respondeat superior liability under § 1983, and therefore, a defendant's position as the supervisor of persons who allegedly violated Plaintiff's constitutional rights does not impose liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Hamilton v. Endell*, 981 F.2d 1062, 1067 (9th Cir. 1992); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Although Plaintiff makes the conclusory allegation that Defendants "knew or should have known" that the policies in question would violate his constitutional rights, Plaintiff has not alleged facts supporting his theory, and has not alleged the specific policy provisions that violate clearly established law and has not alleged that the violations Plaintiff has personally experienced were so obvious as to subject the individual Defendants to individual liability.[1]
Accordingly, monetary damages are unavailable in this action.

Plaintiff argues that the Court should allow Director Shinn to state whether he would consent to a transfer to Canada, but Plaintiff does not dispute that such relief is unavailable in this action.

. . . .

---

[1] Plaintiff cites to an unpublished decision that allegedly concerns a prior version of DO 902, but Plaintiff's references to an unpublished decision based on a prior version of the Department Order do not demonstrate that the law was clearly established. The cases Plaintiff relies on likewise do not show that that the law was so clearly established that implementing the specific policies in question was so obvious that no reasonable official would do it.

Accordingly, there is no showing that the Report and Recommendation is clearly erroneous or contrary to law, and the Report and Recommendation will be accepted and adopted.

**II.     Plaintiff's Motion for Preliminary Injunction Concerning a Violation of Plaintiff's First Amendment Right (Doc. 138)**

Plaintiff requests a "minimum of two hour[s] daily access to read and copy the following publications, either in paper format or through Lexis Nexis on Plaintiff's ADCRR provided electronic tablet: the U.S. Supreme Court, Federal 2d and 3d series, Northeastern and Pacific Reporters, Shepard's United States, Federal, Ohio and Arizona State citations; so that Plaintiff's freedom of speech and expression to this court is unimpeded in the filing of a Motion for Summary Judgment (MSJ) and other future litigation in the instant case." (Doc. 138 at 1.) Plaintiff asserts that he wants to file a Motion for Summary Judgment, but he is "denied the capability to freely receive, read, cite and argue the legal bases of those counts by virtue of DO 902's denial of no-cost current, relevant case law" and will not be able to properly refute future-filed motions for summary judgment filed by Defendants. (*Id.* at 3.)

In Response, Defendant Shinn asserts that whether Plaintiff could file a better work product with more legal resource access does not implicate a constitutional right and Plaintiff is not likely to succeed on the merits because he is improperly attempting to couple the right to freedom of speech/expression with the right of access to the courts. Defendant asserts that Plaintiff has access to a tablet with Lexis Nexis, which includes Arizona Revised Statutes, the Arizona Constitution, the United States Code, the Arizona Appellate Handbook, Ballentine's Law Dictionary, the Law Dictionary, the U.S. Constitution, and secondary materials: the Constitutional Rights of Prisoners-Ninth Edition and Federal Habeas Corpus Practice and Procedure and each resource has subparts with footnotes to case law, legal authority, research references, and notes to decisions. (Doc. 147 at 12-13.) Defendant asserts that DO 902 does not prevent Plaintiff from obtaining the legal material that he wants as he can obtain other legal material through the library for a fee or can seek

to have friends or family provide legal materials. Defendant asserts that the prison does not have unlimited resources to provide every prisoner every article, case law, or book they demand.

### A. Legal Standard

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an extraordinary remedy never awarded as of right").

A plaintiff seeking injunctive relief under Rule 65 of the Federal Rules of Civil Procedure must show: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government opposes a preliminary injunction, "[t]he third and fourth factors of the preliminary-injunction test—balance of equities and public interest—merge into one inquiry ." *Porretti*, 11 F.4th at 1047. The "balance of equities" concerns the burdens or hardships to a prisoner complainant compared with the burden on the government defendants if an injunction is ordered. *Id.* The public interest mostly concerns the injunction's impact on nonparties rather than parties. *Id.* (citation omitted). Regardless, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (citation omitted).

Where a plaintiff seeks a mandatory injunction, rather than a prohibitory injunction, injunctive relief is "subject to a higher standard" and is "permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages,' and the merits of the case are not 'doubtful.'" *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) (quoting *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009)). Further, under the Prison Litigation Reform Act, injunctive relief must be

narrowly drawn and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2); *see Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### B. Discussion

Plaintiff's legal theory is convoluted, but Plaintiff appears to argue that he is "forced to" modify his speech because he is not granted indiscriminate access to legal materials of his choice free of cost, and if he were granted access to such legal materials, his "speech" would be different because he would then cite different legal standards in his filings with the Court. Plaintiff is clear that he is not reiterating a denial of access-to-the-courts claim, where he would be required to show actual injury. (*See* Doc. 138.)

Plaintiff has failed to identify any legal basis for his Motion or that he would be likely to succeed on the merits of a First Amendment claim.[2] Plaintiff specifically disavows that he is asserting an access-to-the-courts claim and admits that he cannot show actual injury. Rather, Plaintiff argues that by failing to provide him every free legal material that he wants, Defendant Shinn is harming his ability to perfectly litigate this case. These allegations do not implicate Plaintiff's First Amendment right to freedom of speech. Accordingly, Plaintiff's Motion for Injunctive Relief Concerning a Violation of his First Amendment Right will be denied.

### III. Motion for Temporary Restraining Order/Preliminary Injunction (Doc. 27)

Plaintiff requests an order requiring Defendants to provide him with a USDA-compliant "dietary approaches to stop hypertension" (DASH) diet to lower Plaintiff's blood pressure in light of his diet-related stage 1 hypertension, which was diagnosed on July 31, 2021. (Doc. 27 at 1.) Plaintiff asserts that he has been provided unhealthy food that is not Kosher since August 1, 2020, when the ADC discontinued the Kosher meat

---

[2] Plaintiff relies on the Magistrate Judge's finding that he stated a claim in Count Five of his First Amended Complaint, but Plaintiff's allegations in Count Five that DO 902 "denies Plaintiff the ability to read, cite, and discuss case law in violation of Plaintiff's First Amendment right to freedom of speech" is not supported by the actual text of DO 902. Accordingly, although the Magistrate Judge found that Plaintiff stated a claim based on his *allegations*, there is no showing that Plaintiff will be likely to succeed on the merits of that claim.

menu and began serving the Common Fare Menu (CFM). (*Id.* at 2.) Plaintiff asserts that prior to the diet change, he had no hypertension, but has since been diagnosed with hypertension and medical staff told him that he needed the DASH diet, but that they do not have the power to provide the DASH diet. (*Id.*)

In Response, Defendant Shinn argues that Plaintiff's requested relief is now moot because Plaintiff is now on a new diet, namely the Common Fare Kosher Meal Plan (CF-KM), which began December 6, 2021. Defendant Shinn asserts that although there is no DASH diet offered in ADC, Plaintiff's medical provider can request a medical non-formulary meal plan that, on a case-by-case basis, can be tailored to the specific medical needs of a prisoner. (Doc. 88-1 ¶¶ 10-14.) Defendant Shinn asserts that Plaintiff has not gone through the process to implement such a diet and because Plaintiff has not sought such a diet, any order from this Court granting Plaintiff injunctive relief is premature.

Defendant McGill argues that Plaintiff's Motion should be denied because Plaintiff is currently receiving the CF-KM, which is constitutionally adequate to maintain his health, there is no evidence that the diet is negatively impacting his health, and Trinity Services Group, Inc. does not have authority to provide him with the DASH diet he requests. L. Donnelly, the Regional Dietician for Trinity and a Licensed Dietician registered with the Commission on Dietetic Registration, states that nutritional adequacy and calorie count are based on dietary reference intakes, which comply with nutritional standards set by the National Institute of Health and the Recommended Daily Allowances from the National Academies of Sciences. (Doc. 97-2 at 12.) She asserts that these nutritional guidelines are standards followed throughout the corrections food service industry and the CF-V and CF-KM meet or exceed the recommended nutrient amounts as specified by these organizations. (*Id.*) She asserts that nutritional adequacy and calorie count for meals served to ADCRR prisoners also must meet the contracted standards identified in the food services contract between ADCRR and Trinity and that all meals provided by Trinity to ADCRR inmates, including both the CF-V and CF-KM meet or exceed the standards. (*Id.*) Specifically, she asserts that the average daily calorie count for both the CF-KM and CF-V is approximately

2,800 calories per day (+/- 200). (*Id.*) She further asserts that the USDA Guidelines that Plaintiff relies on are broad and do not set nutritional standards and are "guidelines" and not nutritional "requirements," but failing to meet them does not result in nutritional inadequacy. (*Id.*)[3]

In Reply, Plaintiff asserts that his claim is not moot because Defendant Shinn admits Plaintiff cannot receive the DASH diet. Plaintiff asserts that the Court should determine that the USDA standards are the "dispositive standard to ascertain if Defendants provided Plaintiff food to sustain him in good health." (Doc. 153 at 3.)

### A.     Legal Standard

An Eighth Amendment claim requires a sufficiently culpable state of mind by the Defendants, known as "deliberate indifference." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. To state a claim of deliberate indifference, plaintiffs must meet a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious"; the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Id.* at 834 (citations omitted). Second, the prison official must have a "sufficiently culpable state of mind," *i.e.*, he must act with deliberate indifference to inmate health or safety. *Id.* (citations omitted). In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 837 (emphasis added).

To state a claim for unconstitutional conditions of confinement, a plaintiff must allege that a defendant's acts or omissions have deprived the inmate of "the minimal

---

[3] The ADC also provides evidence that the items served to Plaintiff are Kosher, but the Court finds this evidence largely irrelevant to the relief sought in the instant Motion for injunctive relief and request that Plaintiff be given the DASH diet. Accordingly, the Court will not further discuss those facts in this Order.

civilized measure of life's necessities" and that the defendant acted with deliberate indifference to an excessive risk to inmate health or safety. *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994) (quoting *Farmer*, 511 U.S. at 834); *see Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049-50 (9th Cir. 2002). Whether conditions of confinement rise to the level of a constitutional violation may depend, in part, on the duration of an inmate's exposure to those conditions. *Keenan v. Hall*, 83 F.3d 1083, 1089, 1091 (9th Cir. 1996) (citing *Hutto v. Finney*, 437 U.S. 678, 686-87 (1978)). "The circumstances, nature, and duration of a deprivation of [ ] necessities must be considered in determining whether a constitutional violation has occurred." *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005) (quoting *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000)).

With respect to meals, "[t]he Eighth Amendment requires only that prisoners receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing." *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993) (citation omitted). But, a prisoner may state a claim where he alleges that he is served meals with insufficient calories for long periods of time. *See id.*; *Foster v. Runnels*, 554 F.3d 807, 814 (9th Cir. 2009).

**B.     Discussion**

Plaintiff has not shown that the Defendants are deliberately disregarding a serious risk to Plaintiff's health by not offering the DASH diet. Plaintiff argues that Defendants have not shown that the DASH diet would not be nutritionally adequate for Plaintiff, but this is impermissible burden shifting. Plaintiff has the burden of demonstrating that very extreme or serious damage will result if he is not granted injunctive relief, but Plaintiff has not carried his burden. There is no doubt that Plaintiff believes that the DASH diet would be beneficial to him, but Plaintiff must show that by not providing the DASH diet to him, Defendants are acting with deliberate indifference to a serious risk of harm to Plaintiff. Although Plaintiff argues that the "USDA standards" should be the "dispositive standard" in this case, neither Plaintiff nor the Court are qualified nutritionists with the ability to determine that the *only* way to prevent a serious risk of harm to Plaintiff is by offering him the DASH diet.

On October 13, 2021, Plaintiff was diagnosed with a vitamin D deficiency, and on October 20, 2021, Plaintiff was diagnosed with hypertension and added to chronic care appointments. (Doc. 133-1 at 5.) Plaintiff was prescribed a vitamin D tablet and a hypertension medication: Losartan 25 mg once per day for three months. (*Id.* at 22.)

Plaintiff asserts that because his doctor noted that the DASH diet can help with hypertension, it is deliberately indifferent to his serious medical needs to not provide him a DASH diet, but there is no evidence supporting that Plaintiff will suffer a serious risk to his health if he is not provided a DASH diet. There is no showing that Plaintiff's doctors said that he must be provided a DASH diet for his hypertension, and there is no showing that Plaintiff's doctors found that Plaintiff's current diet is posing a serious risk of harm to Plaintiff. Donnelly avers that the diet provided to Plaintiff is nutritionally adequate, and other than arguing that the diet does not meet the "USDA guidelines," Plaintiff produces no evidence demonstrating that his current diet poses him a serious risk of harm. Accordingly, Plaintiff has not shown that he is likely to succeed on the merits of his Eighth Amendment claim.

For all of the foregoing reasons, Plaintiff's Motion for Injunctive relief seeking an Order for a DASH diet will be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Plaintiff's Motions for Preliminary Injunction (Docs. 27, 138).

(2) Plaintiff's Motions for Preliminary Injunction (Docs. 27, 138) are **denied**.

(3) The Magistrate Judge's Report and Recommendation (Doc. 80) is **ACCEPTED AND ADOPTED**. Defendant Shinn is dismissed from this action solely in his individual capacity, but remains a Defendant in his official capacity. Defendant McGill is dismissed from this action.

Dated this 26th day of April, 2022.

Honorable John J. Tuchi
United States District Judge